ANTCLIFF v STATE EMPLOYEES CREDIT UNION

Docket No. 64670. Argued October 13, 1981 (Calendar No. 2).—De-
cided December 7, 1982. Rehearing denied 417 Mich 1103.

Howard Antcliff was permanently injured at the construction site
of the State Employees Credit Union building in Lansing when
a powered scaffold on which he was working gave way and he
fell to the ground. Geraldine Antcliff, his wife, for herself and
as her husband's legal guardian, brought an action for damages
against the credit union; the building's architect, Manson,
Jackson & Kane; the general contractor, Christman Construc-
tion Company; and the manufacturer and seller of the scaffold,
Spider Staging Sales Company, Inc. Christman brought a third-
party action against Austin's Painters, Flint, Inc., Antcliff's
employer. Before trial, the plaintiffs settled with the contractor,
the architect, and the credit union. During trial in the Ingham
Circuit Court, Jack W. Warren, J., the plaintiffs were precluded
from offering evidence or arguing that Spider was negligent in
failing to instruct on or give directions for the safe rigging of
its scaffold, and the court charged the jury that Spider had no
duty to give such instructions. The court entered judgment on
the jury's verdict of no cause of action. The Court of Appeals,
M. F. Cavanagh, P.J., and R. M. Maher and Van Valkenburg,
JJ., affirmed, concluding that Michigan law does not impose a
duty on a manufacturer to provide instructions for the safe use
of its product in addition to any duty to warn (Docket No. 78-
1537). The plaintiffs appeal.

In an opinion by Chief Justice Fitzgerald, joined by Justices
Kavanagh, Levin, Coleman, and Ryan (Justice Williams concur-
ring in the result), the Supreme Court *held:*

On the facts of this case, the defendant was under no duty to
instruct on, or give directions for, the safe rigging of its
product.

·1. There is no bright line between instructions for the safe

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 63 Am Jur 2d, Products Liability §§ 26, 27.
[3] 63 Am Jur 2d, Products Liability § 51.
   Manufacturer's or seller's duty to give warning regarding product
     as affecting his liability for product-caused injury. 76 ALR2d 9.
[4] 63 Am Jur 2d, Products Liability §§ 53-56.

use of a product and warnings. Products may be accompanied by instructions or warnings or both or neither. A manufacturer's liability to a purchaser or user of its product should be assessed with reference to whether its conduct, including dissemination of information about the product, was reasonable under the circumstances.

2. A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. The legal conclusion that a duty is owed represents a judgment, as a matter of policy, that one person's interests are entitled to legal protection against another's conduct. A standard of conduct or standard of care is what the person who owes a duty must do or refrain from doing to satisfy the duty. In negligence actions, the standard of care required is the care which a person of reasonable prudence would exercise under the circumstances as they existed. While the standard does not vary, the amount of care and the type of conduct required may vary with the circumstances.

3. Prior case law supports a policy that a manufacturer's standard of care includes the dissemination of information, whether styled as warnings or instructions, appropriate for the safe use of its product. If warnings or directions are required, the information provided must be adequate, accurate, and effective. In this case, the relationship between Spider and Austin's Painters and its employees was that of a manufacturer of professional rigging equipment doing business with professional riggers. The information supplied with the product could be appreciated only by experienced riggers. Spider's failure to instruct on or give directions for the safe rigging of its powered scaffold to a professional rigging company was reasonable under the circumstances. It had no duty to so instruct or give directions.

4. Spider's scaffold was not found to have been defective. The rigging system in which the scaffold was used was designed by Howard Antcliff and a co-worker and appeared to be insufficient to support the scaffold. Both men were experienced riggers, and may be charged with the full appreciation of the danger of inadequately supporting the scaffold. The circumstances do not support the application of the policy requiring instructions on the safe use of a product. Spider should have been able to presume mastery of basic rigging operations.

Affirmed.

95 Mich App 224; 290 NW2d 420 (1980) affirmed.

1. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

   The liability of a manufacturer to the user of its product for injuries arising out of its use should be assessed with reference to whether the manufacturer's conduct, including the dissemination of information about the product, was reasonable under the circumstances.

2. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

   The standard of care required of a manufacturer of a product in a negligence action is the care which a person of reasonable prudence would exercise under the circumstances as they existed; while the standard will not vary, the amount of care and the type of conduct required may vary with the circumstances.

3. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE — PROFESSIONAL CONSUMERS.

   The manufacturer of a powered scaffold intended to be used by professional riggers which sold a scaffold to a professional rigging company which employed only experienced riggers did not have a duty to instruct on or provide directions for the safe rigging of the scaffold and should have been able to presume mastery of basic rigging operations by the riggers.

4. PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE — SAFETY.

   The standard of care of a manufacturer of a product may include dissemination of information regarding the safe use of the product where appropriate; if warnings or directions are required, the information provided must be adequate, accurate, and effective.

*Church, Wyble, Kritselis, Anderson & Robinson, P.C.* (by *Thomas H. Hay* and *William N. Kritselis*), for plaintiffs.

*Joselyn, Rowe, Jamieson, Grinnan, Callahan & Hayes, P.C.* (by *William A. Joselyn*), for defendant Spider Staging Sales Company.

FITZGERALD, C.J. Plaintiffs appeal trial court rulings which precluded the advancement of a theory that defendant Spider Staging Sales Company, Inc., breached its duty to instruct on or give directions for the safe rigging of a powered scaffold

which it manufactures and sells. The Court of Appeals concluded that a manufacturer does not have a duty to provide instructions for the safe use of its product apart from its duty to warn. We hold only that on the facts of *this* case *this* defendant was under no duty to instruct on or give directions for the safe rigging of its product.

I

This products liability action is an outgrowth of a construction accident which occurred on July 7, 1970, at the site of the State Employees Credit Union building in Lansing. Plaintiff Howard Antcliff was seriously and permanently injured when the support system of a powered scaffold on which he was standing gave way unexpectedly and fell to the ground. Antcliff's safety line apparently failed, and he fell with the scaffold. Antcliff and a coworker personally designed the support system and rigged the scaffold. The scaffold was manufactured and sold by Spider to Antcliff's employer, Austin's Painters, Flint, Inc.

In a complaint filed on July 5, 1973, and a first amended complaint filed on April 11, 1977, Geraldine Antcliff, for herself and as the legal guardian of Howard Antcliff, her husband, brought an action for damages against the credit union, owner of the building, the general contractor of the construction project, the architect of the building, and Spider. Prior to trial, plaintiffs settled with the general contractor for $900,000 and released the general contractor, the credit union, and the architect.[1]

---

[1] The general contractor filed a third-party complaint against Austin's Painters on August 27, 1973. The third-party claim was dismissed with prejudice on May 10, 1978.

At trial, plaintiffs were precluded from offering any evidence and from making any argument in support of a theory that Spider was negligent in failing to instruct on or give directions for the safe rigging of the powered scaffolds which it manufactures and sells. The trial court also refused to charge the jury that Spider had a duty to give instructions. In addition, the court stated:

"I instruct you that the defendant Spider Staging has no duty to provide instructions or to educate the users of its product in how to rig, assemble or suspend the Spider Staging units and platform. Therefore, you are not to concern yourself with any claim that Spider Staging had such a duty in this instance. This is not an issue in the case. Spider Staging did not have such duty and you are not to concern yourself with it."

Plaintiffs' other theories of liability were presented to the jury.[2] The jury returned a verdict of no cause of action.

[2] The jury was instructed on several negligence and breach of implied warranty claims. As to the negligence claims, the trial court instructed the jury that Spider could be found negligent if it knew, or should have known, of the following practices at the site and failed to warn against them: 1) use of construction materials as outriggers; 2) inadequate counterweighting of the wooden outriggers; 3) failure to use tie-backs as a fail-safe system so that the scaffold would be supported if an outrigger failed; 4) testing the load-carrying capacity of a scaffold by jumping up and down on it. The trial court also instructed that Spider could be found negligent for failure to design its scaffold in light of existing safety codes and regulations and for failure to advise the purchasers of the scaffold that the level-wind mechanism did not, in fact, always wind evenly (with a resultant sudden dropping and jerking motion). As to the breach of implied warranty claims, the court instructed on plaintiffs' theories that the product was defective in that: 1) the level-wind mechanism did not always function as claimed; 2) the product was not accompanied by a warning about the danger in using improper and inadequate overhead supports; and 3) the product was not accompanied by a warning that the sudden dropping and jerking motions attributable to the level-wind mechanism's malfunctioning required use of a metal overhead support system. See *Antcliff v State Employees Credit Union,* 95 Mich App 224, 235-236, fn 7; 290 NW2d 420 (1980).

Plaintiffs claimed error in the Court of Appeals, because of, *inter alia,* the adverse trial court rulings and related omissions from the requested jury charge. The Court of Appeals affirmed, concluding, in part, that Michigan law does not impose a duty on a manufacturer to provide instructions for the safe use of its product in addition to any duty to warn. 95 Mich App 224, 235; 290 NW2d 420 (1980).

We denied leave to appeal by order dated September 4, 1980; Ryan, J., would have granted leave. Upon reconsideration, we granted leave to appeal. 409 Mich 903 (1981).

II

Plaintiffs argue here, as in the Court of Appeals, that Michigan has long recognized a duty on the part of a manufacturer to instruct on or give directions for the safe use of its product. Moreover, it is argued, such a duty exists separate and apart from any duty to warn about dangers associated with intended use or foreseeable misuse. In the instant case, plaintiffs contend that since a powered scaffold's only intended use occurs when the scaffold is suspended, Spider, as manufacturer, was negligent in failing to provide instructions for the safe rigging of its scaffold.[3]

---

[3] It is undisputed that Spider did not provide any general instructions with its scaffold on how to properly rig a scaffold. As will be seen, its local agent, Richard Crudele, did provide instruction on how to operate the scaffold as well as how to rig it from the ceiling of an auditorium. Defendant concedes that a manufacturer has a duty to instruct on or give directions for the proper use of products it supplies, but argues that this duty does not apply to products not supplied. In addition, it avers there was no evidence elicited at trial from which it could be concluded that Spider had voluntarily assumed an obligation of continual instruction in how to rig its scaffolds. Finally, defendant notes that it did not have any supervisory responsibility or control over practices used at the construction site in the instant case and was not consulted on how to rig the scaffold which plunged to the ground.

The Court of Appeals disagreed with plaintiffs' argument by distinguishing the cases cited in support of it. The Court noted that the decisions in *Hill v Husky Briquetting, Inc,* 54 Mich App 17; 220 NW2d 137 (1974) (carbon monoxide suffocation), and in *Gutowski v M & R Plastics·& Coating, Inc,* 60 Mich App 499; 231 NW2d 456 (1975) (inhalation of a dangerous chemical), were ultimately grounded on the manufacturer's negligence in failing to warn, or failing to adequately warn, of the dangerous properties of its product.

Although we agree with the Court's characterization of these cases, we take pains to write in this case because we perceive no magic in the characterization. There is no bright line between instructions for safe use and warnings, and we decline to fashion one. Products may be accompanied by instructions or warnings or both or neither. Warnings, standing alone, may have no practical relevance without instructions. Instructions may well fade into warnings. A manufacturer's liability to a purchaser or a user of its product should be assessed with reference to whether its conduct, including the dissemination of information about the product, was reasonable under the circumstances. Liability may not be avoided or imposed by skillful manipulation of labels such as instructions or warnings.[4]

### III

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recogni-

[4] For an indication of the difficulty which may be encountered in trying to divine whether a decision was concerned with "warnings" or "instructions for use", see *Ebers v General Chemical Co,* 310 Mich 261; 17 NW2d 176 (1945).

tion and effect, to conform to a particular standard of conduct toward another." Prosser, Torts (4th ed), § 53, p 324. The terse legal conclusion that a duty is owed by one to another represents a judgment, as a matter of policy, that the latter's interests are entitled to legal protection against the former's conduct.

Prosser's "particular standard of conduct" is classically described as the conduct of a reasonably prudent person in light of the apparent risk. In *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977) (FITZGERALD and COLEMAN, JJ., *dissenting),* we quoted with approval from 2 Restatement Torts, 2d, § 283, p 12: " '[T]he standard of conduct to which [the actor] must conform to avoid being negligent is that of a reasonable man under like circumstances.' " 400 Mich 443. This is the so-called standard of care against which a defendant's conduct is compared. Thus, the standard of care is "[w]hat the defendant must do, or must not do * * * to satisfy the duty". Prosser, *supra,* p 324.[5]

In a negligence action, the standard of care is reasonable or due care. *Moning v Alfono, supra.* Thus, the standard of care required is always the care which a person of reasonable prudence would

[5] Note that Prosser cautions: "The distinction [between duty and standard of care] is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other." Prosser, *supra,* p 324.

Analytically, the standard of care gives practical content to considerations of duty. If the interest of a plaintiff invaded by a defendant's conduct is not an interest entitled to legal protection, the conclusion that the defendant owes no duty to the plaintiff as to the objected-to conduct necessarily incorporates the conclusion that the defendant's standard of care does not include avoidance of the objected-to conduct. Conversely, if the conclusion is that the defendant's standard of care does not include certain conduct, perforce the defendant is under no duty as to that conduct.

exercise under the circumstances as they existed. Even though the standard itself never varies, the amount of care and the type of conduct required may vary with the circumstances. *Triestram v Way,* 286 Mich 13; 281 NW 420 (1938) (North, J., and Wiest, C.J., *dissenting)* (sudden emergency). *DePree v Nutone, Inc,* 422 F2d 534 (CA 6, 1970) (warnings and instructions for use provided by vertical meat grinder manufacturer negligently misleading to mechanically unsophisticated homemaker).[6]

In our view, the relationship between plaintiff Howard Antcliff's employer, Austin's Painters, Flint, Inc., and Spider is crucial to an understanding of both the circumstances which actually existed and our resolution of this case.

Austin's Painters has been in business, primarily as a partnership, since 1888. It is a well-known subcontractor in the construction trade in Michigan. It has been engaged as a subcontractor in major construction projects involving both indoor and exterior work, painting as well as sandblasting. In short, Austin's Painters is a professional in the construction trade and necessarily highly experienced in the use and rigging of scaffolding equipment.

In addition, there was testimony at trial by Paul Austin that scaffolding rigging techniques were customarily learned on the job, knowledge passing from the more experienced worker to the less

---

[6] Since the conduct of a person of reasonable prudence is always dependent upon proof of the circumstances as they existed at the time of the defendant's conduct, a standard of care issue is to this extent a matter for the trier of fact. That is, the trier of fact would determine if the defendant acted or failed to act as would a person of reasonable prudence given the circumstances proved.

experienced worker, that scaffold workers did their own rigging, and that choice of suspension technique was largely a matter of personal preference. Both Paul and Lee Austin and a former Austin's Painters employee, Robert H. Smith, testified that Austin's Painters hired experienced workers. Mr. Smith knew of plaintiff Howard Antcliff's prior experience before plaintiff was hired by Austin's Painters. And plaintiff was, in fact, a journeyman painter.[7]

Spider is a Washington corporation owned by two brothers. It manufactures and sells powered scaffolds and accessories for use with the scaffolds. Its catalogue contains pictures and specifications of this equipment and illustrations of various structures from which its scaffolds may be suspended. The structures depicted include, among others, a building, structural steel, a bridge, a water tower and a smokestack.

The powered scaffold on which Howard Antcliff was working at the time of the accident was one of two such scaffolds purchased from Spider by Austin's Painters. In 1966, Austin's Painters purchased its first Spider powered scaffold to aid in the painting of the ceiling of Whiting Auditorium in Flint. This scaffold was delivered with a 23-page service and parts manual.

Richard Crudele, Spider's local agent, testified that he traveled to Flint at the request of Austin's

---

[7] There was testimony at trial that a journeyman painter is one who has served as an apprentice painter for at least a year and also has received formal training. On-the-job training for an apprentice consists of working with a journeyman painter whose responsibilities include teaching safety procedures as well as the trade. Formal training is also designed to teach the trade and safety procedures. Such schooling includes how to safely rig or suspend scaffolding.

Painters to demonstrate how the powered scaffold could be suspended from the ceiling of the Whiting Auditorium and to demonstrate how to use the level-wind mechanism of the scaffold. He further testified that subsequent formal contact with Austin's Painters was limited to requests for parts and maintenance and the ordering, in 1967, of a second powered scaffold. Although he could not recall a single instance, he stated that he likely had discussed rigging practices with representatives of Austin's Painters, not as an expert but only in a spirit of "cooperation". Crudele earlier testified that he did not do business with "people who don't know what they are doing" such as the ordinary consumer. Later, Crudele stated that Spider was providing a "tool" to be used by professional riggers in their area of expertise. Crudele's testimony was uncontradicted.

In sum, the evidence adduced at trial establishes that the relationship between Spider and Austin's Painters and its employees was that of a manufacturer which had designed a product line for professional riggers, doing business with professional riggers. Spider's catalogue contained primarily technical information about the product line, the significance of which only an experienced rigger would appreciate. The testimony of Spider's local agent, himself an experienced rigger, reinforces the conclusion that Spider had confined its product to the market of professionals experienced in rigging techniques for scaffolds, a skilled operation learned on the job and over time. The purchase of Spider powered scaffolds by Austin's Painters, an experienced subcontractor whose work involved extensive use of scaffolding, was a purchase of Spider products by the very professionals Spider sought to reach.

As previously stated, the standard of care involved in a negligence action is that of a person of reasonable prudence under like circumstances. It is this standard against which Spider's conduct, the failure to provide instructions for the safe rigging of its powered scaffold, must be measured. We emphasize that we deal with a narrow question. Our inquiry focuses only on whether Spider's standard of care, on these facts, *includes* a requirement that it instruct on or give directions for the safe rigging of its powered scaffold. We conclude that it does not.

Although the question presented is novel, we do not write on a blank slate. It is helpful to review prior decisions where the issue of a manufacturer's negligence in the dissemination of information about its product was directly raised. *Comstock v General Motors Corp,* 358 Mich 163; 99 NW2d 627 (1959); *Ebers v General Chemical Co,* 310 Mich 261; 17 NW2d 176 (1945); *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979) (LEVIN, J., *dissenting).*

In *Comstock,* the plaintiff claimed that the defendant manufacturer was negligent in failing to adequately warn of defective automobile brakes about which it knew. The defendant had conveyed the warning to its dealers but not to purchasers of its 1953 Buicks. The Court concluded that once the defendant had actual knowledge of the defective power brakes, it was under a duty to convey an effective warning to the purchasers of its product.

In *Ebers,* the plaintiff alleged that the defendant manufacturer breached its implied warranty of fitness for a particular purpose in the marketing of an insecticide with incorrect directions for use.

The plaintiff had applied the insecticide as directed and claimed that the application killed his peach trees. The following year, the defendant materially changed its recommended directions for application. It was first observed: "Although plaintiff claims under the theory of an implied warranty, the real question is whether or not defendant was negligent." 310 Mich 275. The Court quoted with approval the policy enunciated in *E I DuPont de Nemours & Co v Baridon,* 73 F2d 26, 30 (CA 8, 1934):

" 'A rule which would permit a manufacturing chemist, who offered his product to the public for use in the treatment of plants or animals, to so carelessly prepare his product or to so carelessly direct the manner in which it was to be used as to destroy or injure the property of one who purchased it from a dealer and who in ignorance of its dangers used it for its intended purpose and in accordance with the directions of the manufacturer, and which would deny to the person whose property was injured any redress, although the destruction of his property was the natural, probable, and almost certain consequence of the manufacturer's negligence, should not, we think, receive the sanction of this or any other court. Our conclusion is that *a manufacturer of a proprietary product* intended for the specific purpose of preventing or curing the diseases of plants, animals, or human beings, which product when properly used for its intended purpose is either harmless or beneficial, but which when improperly used will cause or is likely to cause material injury, *who undertakes to direct or recommend the manner in which it shall be used, owes the duty to those whom the manufacturer, through his advertising and representations, invites to purchase and use the product, of exercising reasonable care commensurate with the dangers involved in giving such directions and in the making of such recommendations.* The manufacturer is not an insurer that in every instance and under all circumstances no injury will result from the use of his product

as directed or recommended, but if he knows or in the exercise of reasonable care should know that if his product is used as directed or recommended it will cause or be likely to cause material injury, then he is liable to any person who, in reliance upon his representations, directions, and recommendations, uses the product for the purpose and in the manner directed and recommended by the manufacturer and who suffers injury as a direct result, unless it appears that the user also knew or in the exercise of reasonable care should have known that the use of the product would be injurious or would be likely to cause the injuries complained of.' " (Emphasis supplied.) 310 Mich 277-278.

In *Smith v Squibb,* the plaintiff alleged that the defendant drug manufacturer's warnings were inadequate. Although this Court limited its inquiry to the plaintiff's implied warranty claim and an evidentiary question, the majority opinion concluded:

"[W]hen the factual issue is not whether the product itself is defective, but is whether the manufacturer has provided adequate warnings, the existence of a product defect and a breach of duty is determined by the same standard—reasonable care under the circumstances. In the context of a product liability case, it has been said that '[t]he standard by which a jury determines adequacy is the general negligence standard that liability is created by "conduct which falls below the standard established by law for the protection of others against unreasonably great risks of harm" '. *Gutowski, supra,* pp 507-508, quoting from Prosser, Law of Torts (4th ed), p 145." 405 Mich 89-90.

In addition, it is settled law that a manufacturer is liable in negligence for failure to warn the purchasers or users of its product about dangers associated with intended use. In *Clement v Crosby & Co,* 148 Mich 293; 111 NW 745 (1907), the plaintiff was burned when stove polish she was

using to polish a gas range ignited. The stove polish container was not labeled with a warning that the polish was inflammable. The action was allowed. In *Gerkin v Brown & Sehler Co,* 177 Mich 45; 143 NW 48 (1913), the plaintiff alleged that he was poisoned by a dye applied to the muskrat fur collar of his coat. The fact that the poisoning was rare was held insufficient reason to deny the action. Also, a manufacturer has been required to warn of dangers associated with foreseeable misuse. *Gronlie v Positive Safety Mfg Co,* 50 Mich App 109; 212 NW2d 756 (1973); *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972).

Where plans and directions are supplied, we have held that failure to substantially follow them precludes recovery from the engineer or the architect for the collapse of a building, *Bayne v Everham,* 197 Mich 181; 163 NW 1002 (1917), and from the manufacturer for the collapse of a derrick, *Sanders v Kalamazoo Tank & Silo Co,* 205 Mich 339; 171 NW 523 (1919).

In sum, our prior decisions support a policy that a manufacturer's standard of care includes the dissemination of such information, whether styled as warnings or instructions, as is appropriate for the safe use of its product. If warnings or instructions are required, the information provided must be adequate, accurate and effective.[8]

Although this policy has found expression in a

---

[8] There is limited authority in other jurisdictions for the view that, under certain circumstances, a manufacturer's standard of care may include the necessity to provide instructions on the proper use of its product separate and apart from any warnings. Typically, this has occurred when the failure to give instructions for the proper use of a product makes the product unreasonably dangerous to use. See 72 CJS Supp, Products Liability, § 29, p 45, and cases cited therein. See, also, 1 Frumer and Friedman, Products Liability, § 8.05, pp 186.4-186.23.

variety of contexts, most often involving warnings, it is not limited to warnings. It is broad enough to encompass instructions for use. To conclude otherwise would be to restrict the sweep of the law of negligence in this state.

This policy has limits. It has been applied in instances where the product itself had dangerous propensities. Out of recognition that the manufacturer's interests are also entitled to protection, this policy has not been applied in situations involving known or obvious product-connected dangers where the product itself is not defective or dangerous. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970) (wire milk bottle carrier). See, also, Anno: *Products liability—duty to warn,* 76 ALR2d 9, 28-37, and cases cited therein.

In the instant case, Spider manufactured the scaffold which happened to be involved in a construction site accident. The scaffold was not found by the jury to be defective. The most that can be said of the accident is that the load-bearing capacity of the rigging system designed by plaintiff Howard Antcliff and his co-worker was insufficient to support the powered scaffold.[9] This led to the system's collapse. We are unable to conclude that the scaffold's weight was a dangerous propensity which necessitates vindication of the policy. In addition, plaintiff Howard Antcliff and his co-worker were both journeyman painters. In view of their knowledge and experience as riggers, we feel constrained to charge them with full appreciation of the danger of inadequately supporting the scaffold on which they worked. As a result, the circumstances here (a non-defective product lacking in dangerous propensities and a known or obvious

---

[9] The scaffold was stationary at the time its support system failed.

product-connected danger) do not support application of the policy which would require Spider to provide instructions for the safe rigging of its product.

Moreover, the contrary conclusion would lead to demonstrably unfair and unintended results. There are countless skilled operations such as the rigging of scaffolding, which involve otherwise non-dangerous products in potentially dangerous situations. A manufacturer of such a product should be able to presume mastery of the basic operation. The more so when, as here, the manufacturer affirmatively and successfully limits the market of its product to professionals. In such a case, the manufacturer should not be burdened with the often difficult task of providing instructions on how to properly perform the basic operation.[10]

IV

It is well-settled law that the question of duty is to be resolved by the court rather than the jury. The trial court in this case found that defendant manufacturer owed plaintiffs no legal duty to give instructions for the safe rigging of its powered

[10] We note again that this case involves a situation where the manufacturer did not provide any general instructions on how to rig its scaffold. Spider's local agent, however, did provide instructions on a specific rigging application at the request of Austin's Painters. Whether the claim, here, is failure of the manufacturer to instruct or failure to adequately instruct, we perceive no principled reason, on these facts, for distinguishing between the situations. Plaintiffs do not assert, and the record does not support, an argument that defendant intentionally and deliberately sought to evade liability by not providing instructions on use. Also, this is not a situation involving an unavoidably unsafe product such as a drug, an inherently dangerous product such as an explosive, or even a dangerous product such as a pesticide or an aromatic solvent. Also, we do not address here a state-of-the-art change in how to perform a basic operation. The powered scaffold manufactured and sold by Spider was rigged comparably to the way a manually powered scaffold would be suspended from the same structure.

scaffold. We have reviewed that determination—as a question of law—and agree.

We hold that Spider's standard of care, on these facts, does not include a requirement that it instruct on or give directions for the safe rigging of its powered scaffold. As a result, we further hold that Spider was under no duty to plaintiffs to instruct on or give directions for the safe rigging of its product.

In all other respects, the Court of Appeals decision is affirmed.

KAVANAGH, LEVIN, COLEMAN, and RYAN, JJ., concurred with FITZGERALD, C.J.

WILLIAMS, J., concurred in the result.

The late Justice BLAIR MOODY, JR., took no part in the decision of this case.