785 F.2d 310
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES R. RHODES and BRENDA S. RHODES, Plaintiffs-Appellants,
vs.
CINCINNATI, INC., Defendant-Appellee.
 85-1185
 United States Court of Appeals, Sixth Circuit.
 1/28/86
 
 Before: KRUPANSKY and GUY, Circuit Judges; and SUHRHEINRICH, District Judge.*
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 James and Brenda Rhodes appeal the granting of a directed verdict in this products liability action originally filed on December 21, 1981, in the Wayne County Circuit Court for the State of Michigan. Plaintiffs alleged that Mr. Rhodes' injuries suffered in a press brake accident were caused by defendant's negligence and breach of warranty. A jury trial was commenced in January 1985, and, at the close of plaintiffs' proofs, the district court granted defendant's motion for a directed verdict. The directed verdict was predicated primarily on the trial court's application of Owens v. Allis Chalmers Corp., 414 Mich. 413, 326 N.W.2d 372 (1982). The court ruled that the testimony of plaintiffs' expert, Vernon Phelps, was insufficient to create a question for the jury on liability. We affirm the district court on appeal.
 
 I.
 
 2
 Plaintiff, James Rhodes, worked as an electrical technician in the maintenance department of Tyler Refrigeration. Part of his duties involved unjamming press brakes. Plaintiff had been doing this type of work since 1977. On September 13, 1979, plaintiff, along with co-workers Jim Price and Duane Muff, were attempting to unjam 'press No. 9' made by defendant. Plaintiff first attempted to unjam the press following the procedure set forth in defendant's instruction manual. Plaintiff and his co-workers next attempted to use pipe wrenches on the drive shaft in an effort to back up the ram of the press brake. This method also proved unsuccessful.
 
 
 3
 Next, the employees resorted to the removal of the die retainers so the dies could be knocked out with a ram bar. They were in the process of removing the last of the four die retainers when the top die, the die bed, and the bottom die 'exploded' out on plaintiff. Plaintiff and his co-workers testified at trial that they had used this technique before without incident and were unaware there was residual energy in the press brake when it was jammed.
 
 
 4
 Plaintiff's expert testified that defendant's manual did not provide adequate instructions for unjamming the press brake. There was lay testimony by plaintiff's co-workers that the procedure set forth in the manual almost never worked. Plaintiff's expert further testified that it was forseeable that the press would retain a high energy level when in the jammed position and that the tendency of the jammed press to act like a spring would not be readily apparent to those working on the press. Phelps concluded that there should have been a warning on the press directing the reader to consult the manual, which should then have had a warning on the danger of the residual energy and alternative instructions for unjamming the press.
 
 II.
 
 5
 Both the district judge and plaintiffs correctly cite Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir. 1978), cert. denied, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981), as setting forth the standard for the consideration of a motion for directed verdict. This court held in that case:
 
 
 6
 With these facts as a background, we now address the district court's denial of the Union's motion for a directed verdict. In considering a motion for a directed verdict under Rule 50(a), the trial court 'must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury.' O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir. 1975). As applied in this context, 'sufficient evidence' is such that, when viewed in the light of those inferences most favorable to the nonmovant, Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943), and Dowdell v. U.S. Industries, 495 F.2d 641, 643 (6th Cir. 1974), there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ. Sulmeyer v. Coca-Cola Co., 515 F.2d 835, 841 (5th Cir. 1975), cert. denied 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed. 341 (1976), citing 5A Moore's Federal Practice p50.02 (2d ed. 1974). Appellate courts apply this same standard. O'Neill v. Kiledjian, supra, at 513, citing 9 Wright & Miller, Federal Practice and Procedure Sec. 2524, at 542 (1971).
 
 
 7
 The parties agree that in this diversity case Michigan substantive law is to be applied, but disagree as to what testimony is required to create a question for the jury. Relying on Thomas v. International Harvester, 57 Mich. App. 79, 225 N.W.2d 175 (1974), plaintiffs contend that in Michigan the question of adequacy of warning or instructions is to be determined by the jury. Defendant argues that Smith v. Allendale Mutual Ins. Co., 410 Mich. 685, 713-715, 303 N.W.2d 702 (1981), by implication overrules Thomas, and holds that the question of duty is ordinarily for the court. The court agrees with plaintiffs that Smith is not inconsistent with Thomas and only stands for the proposition that it is a legal issue as to what elements of a relationship create a duty but that the jury must determine whether the facts in evidence establish the elements of the relationship. However, the question here is whether there was such a complete absence of proof that no reasonable jury could have found the necessary facts establishing the elements of the alleged duty.
 
 III.
 
 8
 As is typical of product liability cases, plaintiffs put forth a number of theories of recovery. There is no doubt that the issue of lack of warning and proper instructions for unjamming the press brake was one of their theories, as evidenced by the pretrial order. Plaintiffs also alleged design and manufacturing defects, based on the machine's alleged tendency to jam and the danger inherent to jamming. However, plaintiffs do not dispute the trial court's conclusion that they produced no evidence of a design or manufacturing defect at trial. An analysis of Phelp's testimony indicates that he could find no mechanical defect in the machine. There is no claim that the machine was defective because it was capable of jamming. The only support the expert gave to any of plaintiff's theories was in the area of warnings/instructions.
 
 IV.
 
 9
 Plaintiffs allege separate claims based upon improper instructions and lack of warnings, but the Michigan Supreme Court has made it clear that these claims tend to merge into each other and are not distinct claims.
 
 
 10
 There is no bright line between instructions for safe use and warnings, and we decline to fashion one. Products may be accompanied by instructions or warnings or both or neither. Warnings, standing alone, may have no practical relevance without instructions. Instructions may well fade into warnings. A manufacturer's liability to a purchaser or a user of its product should be assessed with reference to whether its conduct, including the dissemination of information about the product, was reasonable under the circumstances. Liability may not be avoided or imposed by skillful manipulation of labels such as instructions or warnings.
 
 
 11
 Antcliff v. State Employees Credit Union, 414 Mich. 624, 630, 327 N.W.2d 814 (1982). Thus, the issue before this court is whether the trial court correctly applied Owens to conclude that plaintiffs failed to present a prima facie case of negligence or breach of implied warranty relative to the reasonableness of defendant's conduct as it related to the warnings and instructions provided.[1]
 
 
 12
 This court finds that the district court properly applied Owens to the facts of this case. Owens involved a factual inquiry into the question of 'whether a forklift is unreasonably dangerous when it fails to include a factory-installed driver restraint,' Owens, 414 Mich. at 427, and the court held: 'Our conclusion that the plaintiff did not present a prima facie case is based on the lack of evidence concerning both the magnitude of the risks involved and the reasonableness of the proposed alternative design.' Id. at 429. Owens was not a failure to warn case, but the prima facie case proofs it required are essentially the same for this products liability case.
 
 
 13
 Plaintiffs contend that Owens should not have been applied, and rely heavily on Antcliff, a warnings case. In Antcliff the standard of conduct to which a manufacturer must conform is defined as 'the conduct of a reasonably prudent person in light of the apparent risk.' Antcliff, 414 Mich. at 631. The court does not find this standard to be different from that in Owens (decided two weeks previously). The question is what action ought to have been taken given the extent of the risk involved.
 
 V.
 
 14
 Relative to warnings, Phelps stated that the machine should have had a sign on it that directed the operator to look at the press manual if the machine jammed. Since plaintiff did look at the manual and, at least initially, proceeded in the manner set forth, this warning issue is really not implicated. Phelps did criticize the manual, however, because it did not warn of the danger of the dies 'blowing out' and did not say what to do if the method set forth for unjamming the machine failed. Plaintiffs contend that there was sufficient proof presented of this alleged failure to warn/failure to instruct claim.
 
 
 15
 Plaintiffs first argue that there was sufficient evidence presented regarding the 'magnitude of the risks.' Phelps testified that defendant should have known that the press brake would jam at the time it designed it and put together the manual; that defendant had been apprised of the tendency of its presses to jam; and that it was inherent in the manner the press was designed that the press would retain energy within its system when stalled at the bottom of a stroke. The problem for plaintiffs is that even when all this testimony by Phelps is taken as true, and, as argued in the hearing before this court, taken in conjunction with testimony by co-workers that defendant's presses frequently jammed and that defendant's suggested method for unjamming was seldom successful, the only conclusion which can be reached is that defendant knew or should have known that there was a risk of the press jamming. As the district court correctly found, there was no evidence at all of the likelihood of this kind of accident occurring nor of the forseeability of the removal of the die retainers so the dies could be knocked out with a ram bar. Phelps testified that he had never done any studies with regard to the frequency of accidents on press brakes; was not familiar with any accident studies with regard to press brakes; and did not know for the year the machine was manufactured how many machines of this type were in operation, how many people had been injured on them, or the number of accidents at that time due to dies coming out of press brakes. He stated that he could not tell the court or the jury how likely this type of accident would have been or could have been projected when the machine was sold in 1966.
 
 
 16
 In fact, at trial, when plaintiffs' counsel questioned Jim Price who had been working as a mechanic for Tyler since 1965 about his reaction to the accident, he stated: 'I couldn't believe it. I almost went in shock because my working on that thing as long as I had been doing it, this--it was unbelievable.' He stated that he had never seen the dies blow out before.
 
 
 17
 The court finds that the district court correctly found that there was no evidence presented on the forseeability of the risk of such an accident. Such a finding is sufficient to support the conclusion of the district court in finding that plaintiffs had not made a prima facie case for the jury. Additionally, however, the court further finds the district court correctly concluded that the expert did not sufficiently address the issue of proposed alternative instructions.
 
 
 18
 Phelps testified that he would have put language in the manual that the average person in the shop could understand on how to safely unjam the press but was unable to give any specific wording or describe any particular technique. He also acknowledged that other means of loosening some part of the machine might also cause injury. He could not cite violations of any laws, codes, or industry practices. He did explain generally an alternative process for unjamming the machine, but he gave no analysis of the alternative. He also concluded that the employer knew of and in the past had used a completely safe method of unjamming the press.
 
 
 19
 The review of a trial court's grant of a motion for directed verdict must, of necessity, be on a case-by-case basis. Based on the deficiencies in the plaintiff's proofs here, the trial judge should be affirmed. In affirming, the court would further note that where plaintiffs plead multiple theories in product liability cases but only offer testimony on a warnings/instructions claim, close scrutiny by the trial judge is appropriate. No technical fault with the product has been established nor has the product malfunctioned. Frequently, as was done here, plaintiffs' counsel use their technical expert as their warnings expert even though it may be debatable that training, for example, as a mechanical engineer makes one also an expert on what warning or instructions should contain or where they should be placed. It is arguably an area that calls into play Fed. R. Evid. 702 requirements that before an expert can opine, it must be a situation where 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.' Warnings and instructions issues present the penultimate opportunity for Monday morning quarterbacking. After the fact, one can always figure out a way that an accident could have been avoided and then translate this post facto analysis into a suggested warning or instruction.
 
 
 20
 It is obvious from reading Judge Enslen's bench opinion on the directed verdict motion that he gave careful and lengthy consideration to these issues before he granted a directed verdict in this personal injury case where there was a seriously injured plaintiff. By granting the directed verdict, he refused to put the imprimatur of the trial court on second guessing in the guise of technical expertise. In this we concur. The judgment of the district court directing a verdict in favor of the defendant is affirmed.
 
 
 
 *
 The Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant asserts several other issues which are not properly before the court, such as whether there is a duty to warn of an open and obvious danger, unsafe use of the product, and the duty of Mr. Rhodes' employer. These issues were not considered by the trial court in granting this directed verdict