**John RUSIN and Irene Rusin, his wife, Plaintiffs-Appellees,**

v.

**GLENDALE OPTICAL COMPANY, INC., Defendant-Appellant.**

No. 85–1480.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 26, 1986.

Decided Nov. 20, 1986.

Daniel S. Goldsmith (argued), Goldsmith Yaker & Goldsmith, Birmingham, Mich., for plaintiffs-appellees.

Joseph F. Lucas, James S. Goulding (argued), Detroit, Mich., for defendant-appellant.

Joseph S. Gill, Brickler & Eckler, Columbus, Ohio, amicus curiae, for Optical Laboratories Assn.

Richard A. Steyer, Loomis, Owen, Fellman & Howe, Washington, D.C., amicus curiae, for Optical Mfrs. Assn.

Before LIVELY, Chief Judge, MERRITT, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

Appellant Glendale Optical Company, Inc. ("appellant"), a manufacturer of protective spectacles, appeals from a judgment entered on a jury verdict in the Eastern District of Michigan, George E. Woods, *District Judge*, awarding appellees John Rusin and his wife, Irene Rusin (collectively or singularly "appellee") $1,846,294.78

compensatory damages and interest for injuries sustained by appellee when a fragment of a grinding wheel shattered the glass lens of the protective spectacles appellee was wearing. Appellee's theory of liability was that appellant breached its duty to warn appellee by not informing him of the superior impact resistance of plastic lenses over glass lenses. Appellant argues that it had no duty to warn appellee of the superior impact resistance of plastic lenses. Appellant also argues that it cannot be held liable for appellee's injuries, since the lens that shattered was not manufactured by appellant. We hold, as a matter of law, that appellant had no duty to inform appellee of the superior impact resistance of plastic lenses. We reverse.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellee has worked as a journeyman diemaker for the Chrysler Corporation ("Chrysler") since 1954. Appellant manufactures and sells protective eyewear. Appellant sells two types of protective spectacles to Chrysler for use in Chrysler's various manufacturing plants. One type of spectacle contains tempered glass lenses and the other type contains polycarbonate plastic lenses. The major difference between the two types is that plastic lenses are more impact resistant than glass lenses, but plastic lenses scratch or haze more easily. It is undisputed that both types of appellant's spectacles meet or exceed state and federal safety standards.

Appellee was wearing a pair of appellant's glass lensed spectacles on October 20, 1977 while he was undercutting die steel on a profile grinding machine at Chrysler's Warren (Mich.) Stamping Plant. The grinding wheel shattered and a fragment of the wheel struck the left lens of appellee's spectacles, shattered it and entered appellee's eye. Appellee was left

---

* Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

652

permanently blind in his left eye. The evidence at trial disclosed that, while the spectacles and lenses originally had been manufactured by appellant, the lens that shattered was a replacement glass lens manufactured by another company. The circumstances under which appellee came to be wearing appellant's spectacles are significant to the resolution of this appeal.

Chrysler maintains elaborate internal procedures for the evaluation and purchase of safety-related plant equipment. A nine member product safety committee is charged with evaluating and recommending products to be purchased. This committee, after viewing manufacturers' presentations and performing its own safety tests, generates a list of approved products that are bulk ordered by Chrysler through competitive bidding. Appellant's sales representatives made various presentations to the committee concerning spectacles with both types of lenses. Appellant's sales representatives, who were interested in creating a market for the more newly developed plastic lenses, testified that these presentations included discussions on the superior impact resistance of plastic lenses. A sales brochure given to Chrysler by appellant also emphasized the superior impact resistance of plastic lenses. By early 1977, the committee had approved both types of lenses and Chrysler had bulk ordered both types of spectacles from appellant. Once a product was bulk ordered, it was up to the individual plant safety supervisor to determine whether to stock it in the tool cribs at his plant. At the plant where appellee worked, the supervisor ordered only glass lensed spectacles for the die shop.

Appellant ships both types of spectacles to Chrysler in individual boxes. On each box there is a printed warning that states:

"CAUTION

These GLENSITE lenses are impact resistant but NOT unbreakable. Clean and inspect frequently. Pitted or scratched lenses reduce vision and seriously reduce protection. Replace immediately. Meets ANSI Z87.1–1968".

An identical warning is attached to one lens of each spectacle by means of a gummed label.

When a box of spectacles arrives at the Warren plant, employees remove the spectacles from the box and remove the gummed warning label from the lens. The spectacles are then placed in plastic bags and deposited in the tool cribs where employees like appellee may pick them up.

Appellee testified that on the day of the accident he took a pair of spectacles from the tool crib. He admitted that plant safety rules required him to wear a full-face plastic safety shield when grinding, but that he neglected to wear one that day. He testified that there were no warnings on the spectacles he used.

The fact that the spectacles used by appellee on the day of the accident contained a lens not manufactured by appellant is explained by Chrysler's policy of periodically replacing lenses that become scratched. These replacement lenses are bulk ordered from a company other than appellant. The evidence indicates that the replacement glass lenses were substantially identical to appellant's glass lenses in all material respects including impact resistance.

Appellee commenced the instant action against appellant, the grinding machine manufacturer, and the grinding machine service company on October 11, 1979 in the Wayne County (Mich.) Circuit Court. The defendants removed the action to the federal court on diversity grounds on December 17, 1980. Discovery proceedings followed. Settlement negotiations between appellee and the grinding machine defendants resulted in a settlement of these claims.

The remaining claims by appellee against appellant were tried to a jury from March 6 to March 11, 1985. Appellee's theory at trial was that appellant had failed to warn appellee of the risks of using glass lensed spectacles as opposed to plastic lensed spectacles. More specifically, appellee claimed that appellant should have warned appellee of the superior impact resistance of plastic lenses. Appellee did not attempt

to prove any other defect in the spectacles. Appellee's liability theory sounded in both negligence and breach of implied warranty, a Michigan version of products liability law. The jury was instructed on both theories.

In a special verdict, the jury found that appellant was liable for appellee's injuries, but the jury's answers to the special verdict questions did not indicate whether the jury found appellant negligent or in breach of its implied warranty.[1] The jury also found that appellee's own negligence was responsible for 25% of his injuries. The jury awarded the husband $1,000,000 in compensatory damages and his wife $375,000 in compensatory damages. The court entered judgment on the jury's verdict after reducing the damage award by 25% for appellee's contributory negligence. The court also awarded appellee $815,044.78 in pre-judgment interest as provided by Michigan law. Mich.Stat.Ann. § 27A.6013 (Callaghan 1986). On May 22, 1985 the court denied appellant's motion for a new trial or judgment n.o.v. Appellant has appealed from the judgment entered on the jury's verdict and from the court's denial of appellant's post-trial motions.

The principal issue raised on appeal—the one we find decisive—is whether appellant owed appellee a duty to warn of the superior impact resistance of plastic lenses over glass lenses. For the reasons stated below, we hold that under Michigan law and the facts of this case appellant was under no duty to warn appellee of the superior impact resistance of plastic lenses.

## II.

Appellee's theory of recovery at trial was that appellant's failure to warn appellee of the difference in impact resistance between glass and plastic lenses breached appellant's duty to warn appellee and caused appellee's injuries. Appellee claimed that, had appellant warned him of the superior impact resistance of plastic lenses, he would have worn plastic lenses and avoided injury. Appellee did not attempt to prove that the spectacles were defective in design or manufacture. Appellee's claim was in the alternative: on a negligence theory— that appellant's failure to warn regarding the superior impact resistance of plastic lenses constituted simple negligence; or on a breach of implied warranty or products liability theory—that appellant's failure to give such a warning created an unreasonably dangerous product. While it is unclear which theory the jury embraced and at oral argument before us appellee's counsel was uncertain whether the case had been tried on a negligence theory, we hold that the Michigan courts would not have permitted recovery under either theory.

Under either theory, it is the law of Michigan that no manufacturer may be held liable absent a showing of some duty owed the plaintiff and a breach of that duty resulting in the complained of injuries. In a failure to warn case, the Michigan courts have characterized the manufacturer's obligation as the duty "to warn the purchasers or users of its product about dangers associated with intended use." *Antcliff v. State Employees Credit Union,* 414 Mich. 624, 637, 327 N.W.2d 814, 820 (1982). The scope of this duty, whether styled in negligence prudent person language or products liability unreasonably dangerous product language, is "reasonable care under the circumstances." *Smith v. E.R. Squibb & Sons,* 405 Mich. 79, 89, 273 N.W.2d 476, 470 (1979). More specifically, the Michigan Supreme Court has held that "[a] manufacturer's liability to a purchaser or user of its product should be assessed with reference to whether its conduct, including the dissemination of in-

---

1. The first two questions of the special verdict state (jury's answers in italics):

"QUESTION ONE: WAS THE DEFENDANT NEGLIGENT OR DID IT BREACH ITS IMPLIED WARRANTY?
ANSWER: *YES*    (YES or NO)

·    ·    ·    ·    ·

QUESTION TWO: WAS THE DEFENDANT'S NEGLIGENCE OR BREACH OF ITS IMPLIED WARRANTY A PROXIMATE CAUSE OF THE INJURY OR DAMAGE TO THE PLAINTIFF?
ANSWER: *YES*    (YES or NO)"

formation about the product, was reasonable under the circumstances." *Antcliff, supra,* 414 Mich. at 630, 327 N.W.2d at 817.

In *Antcliff,* the court considered whether an electric scaffolding manufacturer's duty to warn extended to including rigging instructions with each scaffold. The court refused to adopt a bright line rule between instructions and warnings and stressed that the scope of a manufacturer's duty to warn can be assessed only by what is reasonable in the particular circumstances. *Id.* The court held as a matter of law that, because the manufacturer sold its scaffolding to professional building contractors and because the plaintiff was a "journeyman painter", the manufacturer owed no duty to "warn" the plaintiff on safe rigging instructions. 414 Mich. at 632–35, 327 N.W.2d at 818–19.[2]

It is our task to assess what duty appellant owed appellee under the particular circumstances of the instant case. The factual parallels to the *Antcliff* case are striking. Here, as in *Antcliff,* appellant is in the business of selling its products to professional users. Chrysler is a sophisticated user of protective eyewear independently skilled in the intricacies of protective spectacles. Also as in *Antcliff,* appellee is a journeyman diemaker of many years experience who must be charged with knowledge of safe grinding techniques. The similarity of these facts to the *Antcliff* facts strongly suggests that the scope of appellant's duty to warn appellee is severely circumscribed. In *Antcliff,* the court held that under the circumstances of that case there was no duty to warn on the safe method of operation of the product. Here, we hold that under similar circumstances there was no duty to warn on alternative products and their varying characteristics.

This is not a case in which the manufacturer's conduct in any way misled the product user or otherwise heightened the manufacturer's duty of care. *See Antcliff, supra,* 414 Mich. at 640 n. 10, 327 N.W.2d at 821 n. 10. Rather, appellant took virtually every step it could to ensure that Chrysler was fully aware of the differences between glass and plastic lenses. The record shows that appellant's sales representatives in their presentations to Chrysler stressed the enhanced impact resistance of plastic lenses. Moreover, appellant included two warnings on breakability with each pair of spectacles it sold to Chrysler.

In view of *Antcliff,* we decline to hold that a manufacturer of protective spectacles who sells its product to a sophisticated, professional user like Chrysler has a duty to warn one of Chrysler's highly skilled employees such as appellee of the availability of alternative products. As the Michigan Supreme Court recently stated:

"Manufacturers are not insurers that 'in every instance and under all circumstances no injury will result from the use' of their products."

*Owens v. Allis-Chalmers Corp.,* 414 Mich. 413, 432, 326 N.W.2d 372, 379 (1982), (quoting *E.I. DuPont de Nemours & Co. v. Baridon,* 73 F.2d 26, 30 (8th Cir.1934)).[3]

### III.

To summarize:

We hold, as a matter of law, that appellant's duty to warn appellee did not require appellant to inform appellee of the availability and impact resistance of plastic lenses. Under Michigan law a manufacturer's duty to warn must be evaluated only in light of the particular circumstances of each case. When a manufacturer sells industrial safety equipment to a sophisticated employer for use by professional employees, that duty cannot be said to require a warning on the availability of alternative products. To hold otherwise would be to make appellant an absolute insurer of its products—something the Michigan

---

**2.** The court also held that "[i]t is well-settled law that the question of duty is to be resolved by the court rather than the jury." 414 Mich. at 640, 327 N.W.2d at 821.

**3.** In view of our holding on the scope of appellant's duty to warn, we find it neither necessary nor appropriate to address appellant's claim based on the replacement of its lens with another manufacturer's lens.

courts do not permit. Consequently, we reverse the judgment of the district court and remand the case to that court with instructions to enter a judgment dismissing the action.

REVERSED and REMANDED.