RASMUSSEN v LOUISVILLE LADDER COMPANY, INC

Docket Nos. 148918, 164752. Submitted October 5, 1995, at Marquette. Decided April 6, 1995; approved for publication June 22, 1995, at 9:00 A.M.

Karine G. Rasmussen, as personal representative of the estate of Patrick J. Rasmussen, deceased, and Steven and Sharon Boyer brought an action in the Dickinson Circuit Court against Louisville Ladder Company, Inc., Emerson Electric Company, and Lake Shore, Inc., seeking damages resulting from a construction accident that killed Patrick Rasmussen and injured Steven Boyer. The action was removed to the 95B District Court after mediation. The accident occurred when hanging scaffolding manufactured by Emerson collapsed while Rasmussen and Boyer were using it. Both men were employed by Roy Ness Contracting and Sales, Inc., the general contractor hired by Lake Shore for the purpose of constructing a multistory building on Lake Shore's property. A jury found Emerson Electric forty percent responsible for the injuries for failing to give adequate warning regarding the use of its scaffolding and Lake Shore sixty percent responsible on the basis of the inherently dangerous activity doctrine. The court denied motions for judgment notwithstanding the verdict or a new trial by Lake Shore and Emerson. Lake Shore and Emerson appealed and the Dickinson Circuit Court, Charles H. Stark, J., affirmed. Emerson appealed by leave granted. (Docket No. 148918). The Court of Appeals, DOCTOROFF, C.J., and FITZGERALD, J. (JANSEN, J., dissenting), denied Lake Shore's application for leave to appeal in an order dated July 14, 1992 (Docket No. 148875). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. *Rasmussen v Lake Shore, Inc,* 442 Mich 911 (1993). The appeals were consolidated.

The Court of Appeals *held:*

1. The trial court erred in submitting the plaintiffs' claim

REFERENCES

Am Jur 2d, Master and Servant §§ 139-294; Products Liability § 331.

See ALR Index under Labor and Employment; Products Liability.

regarding failure to warn to the jury because the evidence established that Roy Ness Contracting and its employees were sophisticated users of scaffolding equipment. The manufacturer of a nondangerous product may presume that a professional or sophisticated user can properly perform the basic operation of the product. The trial court abused its discretion in denying Emerson's motion for a directed verdict.

2. The inherently dangerous activity doctrine does not apply under the facts of this case. The trial court erred in denying Lake Shore's motion for a directed verdict or judgment notwithstanding the verdict.

Reversed.

1. PRODUCTS LIABILITY — DUTY TO WARN — SOPHISTICATED USERS.

A manufacturer's duty to warn purchasers or users of its product extends to dangers associated with the intended use or reasonably foreseeable misuse of its product and arises when the manufacturer knows or should know of the risk of danger; a manufacturer's duty to warn is not absolute, and a "sophisticated user" exception to the general duty to warn is recognized; under the "sophisticated user" exception, a manufacturer of a nondangerous product may presume that a professional or sophisticated user can properly perform the basic function of the product.

2. MASTER AND SERVANT — INDEPENDENT CONTRACTORS — NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES.

The employer of an independent contractor generally is not liable for the contractor's negligence; liability may be imposed under the inherently dangerous activity doctrine when the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the contract; the risk of danger must be recognized in advance, at the time the contract is made; liability should not be imposed under the doctrine where a new risk not reasonably contemplated at the time of the contract is created in the performance of the work or where the activity involved was not unusual, the risk was not unique, reasonable safeguards against injury could readily have been provided by well-recognized safety measures, and the employer selected a responsible, experienced contractor.

*Wisti & Jaaskelainen, P.C.* (by *Mark A. Wisti*), for Karine G. Rasmussen, as personal representa-

tive of the estate of Patrick J. Rasmussen, deceased.

*Lori, Jaspen & Stopczynski, P.C.* (by *Daniel M. Jaspen*), and *Peterson, Beauchamp, DeGrand, Reardon & Hall, P.C.* (by *John R. Beauchamp*), for Steven and Sharon Boyer.

*Plunkett & Cooney* (by *Harry Ingleson, II*), and *Bodman, Longley & Dahling* (by *Theodore Souris* and *David G. Chardavoyne*), for Emerson Electric Company.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt*), for Lake Shore, Inc.

Before: GRIFFIN, P.J., and SAWYER and R. L. ZIOLKOWSKI,* JJ.

PER CURIAM. These consolidated appeals arise out of the collapse of hanging scaffolding manufactured by defendant Emerson Electric Company while being used by Steven Boyer and Patrick Rasmussen. A district court jury awarded Stephen Boyer $1,250,000 and his wife, Sharon Boyer, $75,000. In addition, the jury awarded $1,500,000 to the estate of Patrick Rasmussen, deceased, $1,500,000 to Patrick's widow, and $500,000 to Patrick's son, Ryan Rasmussen. The $1,500,000 award to Patrick Rasmussen's estate was reduced by $1,416,180 following defendant Lake Shore's motion for remittitur.

In Docket No. 148918, defendant Emerson Electric Company appeals by leave granted from the jury verdict finding it forty percent responsible for plaintiffs' injuries for failing to give adequate warnings regarding the use of its scaffolding. In Docket No. 164752, defendant Lake Shore, Inc.,

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

appeals as on leave granted[1] from the jury verdict finding it sixty percent responsible for plaintiffs' injuries. Defendant Lake Shore's liability was premised upon the inherently dangerous activity doctrine. In both appeals, we reverse.

I

This case stems from a construction accident that occurred on February 21, 1983. As a result of the accident, Steven Boyer received serious, permanent, and disabling injuries and Patrick Rasmussen was killed. Both men were employed by Roy Ness Contracting and Sales, Inc., as ironworkers. Ness was the general contractor hired by defendant Lake Shore, Inc., for the purpose of constructing a multistory building on Lake Shore's property.

At the time of the accident, Patrick Rasmussen and Steven Boyer were using hanging scaffolding to assist them in bolting metal siding to the frame. While moving the scaffolding, they disconnected the main steel cable supporting the left side of the scaffold. Because Ness Contracting had failed to provide the workers with secondary metal safety cables, the workers substituted one-inch hemp rope for the missing steel cable. The hemp rope was tied to a steel I-beam on top of the building and was the only line supporting one-half of the weight of the scaffold. The scaffolding collapsed when another ironworker attempted to climb on the scaffold and the hemp rope snapped or was cut.

---

[1] Lake Shore's application for leave to appeal was denied by the Court of Appeals, DOCTOROFF, C.J., and FITZGERALD, J. (JANSEN, J., dissenting), in an order dated July 14, 1992 (Docket No. 148875). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. *Rasmussen v Lake Shore, Inc,* 442 Mich 911 (1993).

II

Defendant Emerson Electric Company's challenge regarding the denial of its motion for a directed verdict is dispositive. It argues that the trial court erred in submitting plaintiffs' claim regarding the failure to warn to the jury when the evidence established that Ness Contracting and its employees were "sophisticated users" of scaffolding equipment. We agree.

We review the denial of a motion for a directed verdict for an abuse of discretion. *Winiemko v Valenti,* 203 Mich App 411, 415; 513 NW2d 181 (1994); *Schutte v Celotex Corp,* 196 Mich App 135, 138; 492 NW2d 773 (1992). We view the evidence and all reasonable inferences in a light most favorable to the nonmoving party to determine whether a question of fact for the jury existed. *Winiemko, supra.*

In order to establish a prima facie case of negligence, a plaintiff must prove

> (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. [*Jackson v Oliver,* 204 Mich App 122, 125; 514 NW2d 195 (1994).]

A manufacturer's duty to warn purchasers or users extends to dangers "associated with the intended use or reasonably foreseeable misuse of their products . . . ." *Glittenberg v Doughboy Recreational Industries (On Rehearing),* 441 Mich 379, 387-388; 491 NW2d 208 (1992). See also *Gronlie v Positive Safety Mfg Co,* 50 Mich App 109; 212 NW2d 756 (1973); *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972). The duty to warn arises when a manufacturer knows

or should know of the risk of danger. *Stachurski v K mart Corp,* 180 Mich App 564, 567; 447 NW2d 830 (1989); *Warner v General Motors Corp,* 137 Mich App 340, 346; 357 NW2d 689 (1984).

As pointed out in *Glittenberg,* however, a manufacturer's duty to warn is not absolute. Michigan courts have recognized a "sophisticated user" exception to a manufacturer's general duty to warn. See, e.g., *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982); *Jodway v Kennametal, Inc,* 207 Mich App 622, 627-628; 525 NW2d 883 (1994); *Aetna Casualty & Surety Co v Ralph Wilson Plastics Co,* 202 Mich App 540, 546-548; 509 NW2d 520 (1993); *Mascarenas v Union Carbide Corp,* 196 Mich App 240; 492 NW2d 512 (1992).

In *Antcliff, supra* at 639-640, our Supreme Court addressed a scaffolding manufacturer's duty to warn regarding the safe rigging of its product. There, the Court held that the defendant manufacturer's standard of care did not require it to instruct on the safe rigging of its powered scaffold. The Court reasoned that a manufacturer of a nondangerous product should be able to presume that a professional or sophisticated user could properly perform the product's basic operation:

> In the instant case, Spider manufactured the scaffold which happened to be involved in a construction site accident. The scaffold was not found by the jury to be defective. The most that can be said of the accident is that the load-bearing capacity of the rigging system designed by plaintiff Howard Antcliff and his co-worker was insufficient to support the powered scaffold. This led to the system's collapse. We are unable to conclude that the scaffold's weight was a dangerous propensity which necessitates vindication of the policy. In addition, plaintiff Howard Antcliff and his co-

worker were both journeyman painters. In view of their knowledge and experience as riggers, we feel constrained to charge them with full appreciation of the danger of inadequately supporting the scaffold on which they worked. As a result, the circumstances here (a non-defective product lacking in dangerous propensities and a known or obvious product-connected danger) do not support application of the policy which would require Spider to provide instructions for the safe rigging of its product.

Moreover, the contrary conclusion would lead to demonstrably unfair and unintended results. There are countless skilled operations such as the rigging of scaffolding, which involve otherwise non-dangerous products in potentially dangerous situations. A manufacturer of such a product should be able to presume mastery of the basic operation. The more so when, as here, the manufacturer affirmatively and successfully limits the market of its product to professionals. In such a case, the manufacturer should not be burdened with the often difficult task of providing instructions on how to properly perform the basic operation.

Plaintiffs' attempt to distinguish *Antcliff* on the basis that in this case the employer, Ness Contracting, was not a sophisticated user of hanging scaffolding is unpersuasive. Plaintiffs point to the fact that Ness Contracting had only used this type of hanging scaffolding on one other occasion, in 1976. Even when viewed in a light most favorable to plaintiffs, we conclude that the evidence adduced at trial refutes plaintiffs' argument. The proofs established that Ness Contracting had specialized in the construction of preengineered metal buildings for the past twenty-six years. While Ness Contracting may not have used hanging scaffolding on a regular basis, its employees were trained ironworkers who were experienced in rigging hanging scaffolding. Further, it had used other

types of scaffolding on numerous occasions. In short, the evidence established that the relationship between defendant Emerson Electric and Ness Contracting and its employees was similar to that observed in *Antcliff.* In both cases, the manufacturers that designed a product line for professional riggers dealt with professional riggers. Because *Antcliff* is controlling, we hold that the trial court abused its discretion in denying defendant Emerson Electric's motion for a directed verdict.

III

Next, we consider defendant Lake Shore's claim that the trial court abused its discretion in denying its motions for a directed verdict or judgment notwithstanding the verdict. Lake Shore claims that plaintiffs failed to establish that the work contracted for was an inherently dangerous activity.

The inherently dangerous activity doctrine is an exception to the more general rule that the employer of an independent contractor is not liable for the contractor's negligence. *Bosak v Hutchinson,* 422 Mich 712, 727-728; 375 NW2d 333 (1985); *Phillips v Mazda Motor Mfg (USA) Corp,* 204 Mich App 401, 405-406; 516 NW2d 502 (1994); *Kulp v Verndale Products, Inc (On Remand),* 193 Mich App 524, 529-530; 484 NW2d 699 (1992). The doctrine was succinctly stated in *Szymanski v K mart Corp,* 196 Mich App 427, 431-432; 493 NW2d 460 (1992), vacated and remanded on other grounds 442 Mich 912 (1993):

> Under the doctrine, liability may be imposed when "the work contracted for is likely to create a peculiar risk of physical harm or if the work involves a special danger inherent in or normal to the work that the employer reasonably should have known about at the inception of the con-

tract." *Oberle v Hawthorne Metal Products Co,*
192 Mich App 265, 268; 480 NW2d 330 (1991),
citing *Bosak* [*v Hutchinson,* 422 Mich 712; 375
NW2d 333 (1985)]. The risk or danger must be
recognizable in advance, i.e., at the time the con-
tract is made. The Court in *Bosak* emphasized that
liability should not be imposed where a new risk is
created in the performance of the work and the
risk was not reasonably contemplated at the time
of the contract. *Bosak, supra* at 728.

Similarly, liability should not be imposed where
the activity involved was not unusual, the risk was
not unique, "reasonable safeguards against injury
could readily have been provided by well-recog-
nized safety measures," and the employer selected
a responsible, experienced contractor. *Funk* [*v
General Motors Corp,* 392 Mich 91, 110; 220 NW2d
641 (1974)].

In this case, we agree with defendant Lake
Shore that the inherently dangerous activity doc-
trine does not apply to the instant facts. Contrary
to plaintiffs' assertion on appeal, the dangerous
activity undertaken was the decision to forgo the
use of steel safety cables, not the use of hanging
scaffolding. The activity recognized by defendant
Lake Shore to be performed by plaintiffs involved
the fairly routine task of constructing a multistory
building using hanging scaffolding. Reasonable
safeguards against injury were expected to be
used. *Id.* Further, there is no record evidence that
Lake Shore knew that Ness Contracting would
substitute hemp rope for steel safety cables. View-
ing the undisputed facts in a light most favorable
to plaintiffs, we conclude that the inherently dan-
gerous activity doctrine does not apply as a matter
of law.

In view of our disposition of both appeals, it is
unnecessary to address defendants' remaining ar-
guments on appeal.

Reversed.