PORTELLI v I R CONSTRUCTION PRODUCTS COMPANY, INC

Docket Nos. 172601, 173876. Submitted July 16, 1996, at Detroit. Decided September 6, 1996, at 9:00 A.M.

Godwin J. Portelli brought an action in the Wayne Circuit Court against I.R. Construction Products Company, Inc., Comprehensive Health Services, Inc., and Wellness Plan of Michigan, an assumed name of Comprehensive, seeking damages for injuries sustained when the plaintiff, an employee of International Service System, Inc. (ISS), was hit by an access door, manufactured by I.R. Construction, that was installed in the ceiling in a building owned by Comprehensive and leased by Wellness Plan. Comprehensive filed a third-party complaint against ISS, alleging that it had contracted with ISS to provide maintenance service to the building and was an insured under ISS' liability insurance. The trial court, Cynthia D. Stephens, J., granted summary disposition for I.R. Construction, finding that it was not foreseeable that the door, which was designed for installation in a wall, would be installed in a ceiling. The court also granted summary disposition for Comprehensive and Wellness on the basis that, because the contract between ISS and Comprehensive gave ISS complete authority to maintain the premises, I.R. Construction did not owe a duty to the plaintiff to make the premises safe. The court then granted I.R. Construction's motion to tax costs against the plaintiff for the four depositions it used to procure the summary disposition. The plaintiff appealed from the order granting the motions for summary disposition (Docket No. 172601) and the order taxing costs for the depositions (Docket No. 173876). The appeals were consolidated.

The Court of Appeals *held*:

1. The trial court did not err in granting summary disposition for Comprehensive and Wellness on the basis that ISS, an independent contractor and the plaintiff's employer, was responsible for making the workplace safe and for preventing building defects.

2. The evidence established that the door was designed and intended only for use in a wall, that I.R. Construction did not have knowledge its doors were being used in ceilings, and that the installation of the door in the ceiling was not a reasonably foreseeable misuse of the product. Because the door was marketed only to

industry professionals who could be assumed to have a certain mastery of the usage of the product, I.R. Construction had no duty to warn the ultimate user. The trial court did not err in granting summary disposition for I.R. Construction on this basis. The court properly rejected as a basis for its order I.R. Construction's argument that because its door was merely a component part of the overall construction product, the building, it has no liability for the dangers associated with its product caused by the manner in which the door was incorporated into the building. The door did not lose its identity as a single product and did not become a component part of the building in a legal sense.

3. The trial court properly concluded that MCL 600.2549; MSA 27A.2549 allows the taxation of costs for the depositions used to support the motion for summary disposition by I.R. Construction on the basis that the depositions were "necessarily used," as required by the statute. However, because the depositions were not "filed in any clerk's office" as also required by the statute, their cost was not taxable. The trial court did not have statutory authority to tax the costs for the depositions, and that order must be reversed.

Affirmed in part and reversed in part.

1. MASTER AND SERVANT — NEGLIGENCE — INDEPENDENT CONTRACTORS — INJU-
    RIES TO EMPLOYEES — LIABILITY OF PROPERTY OWNERS — INHERENTLY
    DANGEROUS ACTIVITIES.

    An owner of property generally is not liable to an employee of an
    independent contractor for negligence, and the independent con-
    tractor is responsible for job safety and maintaining a safe work-
    place; however, the property owner may be liable where it retains
    control over the work done and the independent contractor's activi-
    ties or where the work is inherently dangerous, i.e., the work rea-
    sonably can be foreseen as dangerous to third parties; to be inher-
    ently dangerous, the risk involved must be recognizable in advance,
    at the time of the contract, and must be inherent in the work itself
    or normally expected in the ordinary course of doing the work.

2. PRODUCTS LIABILITY — DUTY TO WARN.

    The manufacturer of a product has a duty to warn of dangers associ-
    ated with the intended uses or reasonably foreseeable misuse of its
    product; foreseeability of misuse may be inherent in the product or
    based on evidence that the manufacturer had knowledge of a par-
    ticular type of misuse; however, where the purchaser is a "sophisti-
    cated user" of the manufacturer's product, the purchaser is in the
    best position to warn the ultimate user of the dangers associated

with the product, thereby relieving the sellers and manufacturer from the duty to warn the ultimate user.

3. COSTS — DEPOSITION COSTS.
    Costs for depositions are taxable where the depositions are filed in any clerk's office and are read in evidence at trial or are necessarily used (MCL 600.2549; MSA 27A.2549).

*Thomas, Garvey, Garvey & Sciotti* (by *James McKenna*) (*Jerald R. Lovell*, of Counsel), for Godwin J. Portelli.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Thomas F. Kauza* and *William F. Rivard*), for I.R. Construction Products Company, Inc.

*Galbraith & Booms* (by *Steven B. Galbraith*), for Comprehensive Health Services, Inc., and Wellness Plan of Michigan.

Before: HOOD, P.J., and GRIFFIN and J. F. FOLEY,* JJ.

PER CURIAM. In Docket No. 172601, plaintiff appeals as of right the circuit court's orders granting summary disposition for defendants I.R. Construction Products Company, Inc., Comprehensive Health Services, Inc., and Wellness Plan of Michigan. In Docket No. 173876, plaintiff appeals as of right the circuit court's order for I.R. Construction taxing costs against plaintiff in the amount of $2,144.90. The appeals were consolidated. We affirm in part and reverse in part.

On August 1, 1991, plaintiff, an employee of International Service System, Inc. (ISS), was assigned to perform maintenance work on certain air-conditioning units located at 6500 John C. Lodge in the City of Detroit. The building was owned by Com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

prehensive Health Services, Inc., and was leased to Wellness Plan of Michigan, an assumed name for Comprehensive.[1] Plaintiff gained entry to the air-conditioning units through an access door that was installed in the ceiling of a restroom. The access door was manufactured by I.R. Construction Products Company, Inc. (I.R. Construction). Upon completion of his maintenance work, plaintiff closed and locked the door. The door then came open, swung downward, and struck plaintiff in the head, propelling him backward into the adjacent wall.

On July 14, 1992, plaintiff filed suit, alleging that I.R. Construction improperly designed and manufactured the access door. Plaintiff further alleged that Comprehensive failed to warn him of the dangerous condition on its premises presented by the access door. Plaintiff alleged that, as a result of defendants' actions, he suffered a closed head injury that left him with permanent health problems.

On December 16, 1992, Comprehensive filed a third-party complaint against ISS, alleging that it had contracted with ISS to provide maintenance service to the building and that under the agreement it was a named insured under ISS' liability insurance.

On March 26, 1993, plaintiff filed his first-amended complaint adding Milcor Limited Partnership as a defendant. The amended complaint alleged that Milcor manufactured and marketed the access door. On August 18, 1993, by stipulation of the parties, Milcor was dismissed from the case without prejudice.

---

[1] Throughout this opinion, "Comprehensive" refers to Comprehensive Health Services, Inc., and Wellness Plan of Michigan.

On October 13, 1993, after extensive discovery, I.R. Construction filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that because the door was designed for use only in a wall, not a ceiling, it was not defectively designed. On October 20, 1993, Comprehensive filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that because plaintiff was performing maintenance work as an employee of ISS at the time of the accident, it owed no duty to make the premises safe for plaintiff because he was employed by the company it hired to make the premises safe. Comprehensive further argued that it owed no duty to warn because the door presented an open and obvious danger.

In granting summary disposition for I.R. Construction, the trial court found that it was not foreseeable that the door, which was designed for application in a wall, would be installed in a ceiling. In granting summary disposition for Comprehensive, the lower court found that plaintiff was an employee of ISS and that the contract between Comprehensive and ISS provided that ISS had complete authority to maintain the premises where the accident occurred. Plaintiff subsequently filed, and the trial court denied, a motion for reconsideration with respect to each defendant.

On January 26, 1994, I.R. Construction filed a motion to tax costs against plaintiff, seeking costs for four depositions necessarily used to procure summary disposition pursuant to MCR 2.625(A)(1) and MCL 600.2549; MSA 27A.2549. At the conclusion of the March 11, 1994, hearing regarding I.R. Construction's motion, the lower court entered an order taxing

costs against plaintiff in the amount of $2,144.90 for the cost of four depositions.

Plaintiff first argues that the lower court erred in finding that Comprehensive owed no duty to him and, thus, erred in granting summary disposition for Comprehensive.[2] This Court reviews a lower court's grant of summary disposition de novo to determine if a defendant was entitled to judgment as a matter of law. *Citizens Ins Co v Bloomfield Twp*, 209 Mich App 484, 486; 532 NW2d 183 (1995). A motion for summary disposition pursuant to MCR 2.116(C)(10) is properly granted when, giving the benefit of doubt to the nonmoving party, it is impossible for the record to be developed so as to leave open an issue upon which reasonable minds might differ. *Burger v Midland Cogeneration Venture*, 202 Mich App 310, 316; 507 NW2d 827 (1993).

As a general rule, an owner of property is not liable to an employee of an independent contractor for negligence. *Id.*; *Justus v Swope*, 184 Mich App 91, 94; 457 NW2d 103 (1990); *Samodai v Chrysler Corp*, 178 Mich App 252, 255; 443 NW2d 391 (1989). In such situations, the actual employer of the worker is immediately responsible for job safety and for maintaining a safe workplace. *Samodai, supra.* The two main exceptions to this general rule provide for liability if (1) the property owner retains control over the work done and the contractor's activities, or (2) the work is inherently dangerous—the work can reasonably be

---

[2] Although Comprehensive's motion was premised on MCR 2.116(C)(8) and (10), in making its decision to grant the motion, the lower court focused on the contract between Comprehensive and plaintiff's employer, ISS. The court did not specify on which ground summary disposition was granted, but because matters outside the pleadings were considered, summary disposition was likely granted pursuant to MCR 2.116(C)(10).

foreseen as dangerous to third parties. *Burger, supra.* To be inherently dangerous, the risk involved must be recognizable in advance, at the time of the contract, and must be inherent in the work itself or normally expected in the ordinary course of doing the work. *Justus, supra.*

In this case, at the time of plaintiff's injury, he was employed by an independent contractor, ISS, and was performing maintenance work pursuant to ISS' contract with Comprehensive. The contract and the testimony clearly establish that ISS had full authority over the maintenance of the building without interference from Comprehensive. According to the contract between ISS and Comprehensive, ISS was to provide, among other things, repair and maintenance to the building. In order to provide this service, ISS was to employ heating and ventilation mechanics and "utility tradesmen." The agreement specifically contemplated that ISS was to be responsible for "preventive maintenance work" and "corrective repair work." The stated goal of ISS in offering this service was to maintain "a safe and comfortable, healthy environment for all occupants and the general public." ISS employees were to make daily and weekly inspection tours of the mechanical systems of the building, and, as part of these inspections, employees were to report any "questionable and unsatisfactory conditions discovered during the tour."

Furthermore, in his deposition, plaintiff acknowledged that it was ISS' responsibility to repair and maintain all aspects of the building. Plaintiff indicated that he had used the access door in question more than twenty times and that ISS personnel in the building were responsible for fixing any defective condi-

tions if they observed them. During his tenure working on the premises, plaintiff testified that he became aware that the overhead access doors had a problem latching. Plaintiff stated that each time he closed one of the doors he would use his pliers to pull on the knob to ensure that it had latched. Plaintiff also testified that he informed his supervisor of the problem and the supervisor told the other employees to check the doors upon closing them to determine whether they had latched closed.

With respect to ISS' responsibilities, the plain language of the contract and other relevant evidence unambiguously indicate that ISS had broad authority over the maintenance and repair of the building. Further, these duties do not appear to involve any aspects that could be seen as inherently dangerous. We therefore conclude that the lower court did not err in granting summary disposition for Comprehensive where ISS, an independent contractor and plaintiff's employer, was responsible for making the workplace safe and for preventing building defects.[3]

Plaintiff also argues that the lower court erred in granting summary disposition for I.R. Construction because there was a genuine issue of material fact whether it was foreseeable that the access door would be installed in a ceiling. We disagree.

Under Michigan law, the manufacturer of a product has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of

---

[3] While this determination involves the interpretation of the contract between ISS and Comprehensive, a court may interpret a contract for purposes of a motion for summary disposition where, as here, the terms are clear. *Michaels v Amway Corp*, 206 Mich App 644, 649; 522 NW2d 703 (1994).

its product. *Bordeaux v Celotex Corp*, 203 Mich App 158, 167; 511 NW2d 899 (1993). Foreseeability of misuse may be inherent in the product or may be based on evidence that the manufacturer had knowledge of a particular type of misuse. *Shipman v Fontaine Truck Equipment Co*, 184 Mich App 706, 713; 459 NW2d 30 (1990).

Moreover, it is well-settled law that, where a purchaser is a "sophisticated user" of a manufacturer's product, the purchaser is in the best position to warn the ultimate user of the dangers associated with the product, thereby relieving the sellers and manufacturers from the duty to warn the ultimate user. See *Antcliff v State Employees Credit Union*, 414 Mich 624, 640; 327 NW2d 814 (1982); *Jodway v Kennametal, Inc*, 207 Mich App 622, 627-629; 525 NW2d 883 (1994). Michigan jurisprudence has recognized the sophisticated-user doctrine at least since *Antcliff, supra,* in which the Supreme Court stated:

> There are countless skilled operations such as the rigging of scaffolding, which involve otherwise non-dangerous products in potentially dangerous situations. A manufacturer of such a product should be able to presume mastery of the basic operation. The more so when, as here, the manufacturer affirmatively and successfully limits the market of its product to professionals. In such a case, the manufacturer should not be burdened with the often difficult task of providing instructions on how to properly perform the basic operation. [*Id.* at 640.]

The Supreme Court also stated that not to recognize the sophisticated-user defense "would lead to demonstrably unfair and unintended results." *Id.* The holding in *Antcliff,* however, was limited to the facts and parties of that case. *Id.* at 627. Nevertheless, the

sophisticated-user doctrine has been further recognized and discussed by this Court in numerous opinions.

In *Ross v Jaybird Automation, Inc*, 172 Mich App 603, 607; 432 NW2d 374 (1988), the plaintiffs originally brought a products liability action against the defendants for their failure to warn or instruct the injured plaintiff's employer regarding the installation of a coil cradle machine. The trial court found that the defendants owed no duty to warn or instruct and granted summary disposition for the defendants. In affirming the decision of the circuit court, this Court stated:

> A seller or manufacturer should be able to presume mastery of basic operations by experts or skilled professionals in an industry, and should not owe a duty to warn or instruct such persons on how to perform basic operations in their industry. [*Id.*]

More recently, in *Rasmussen v Louisville Ladder Co, Inc*, 211 Mich App 541; 536 NW2d 221 (1995), the plaintiff's decedent was involved in an accident where a hanging scaffolding manufactured by the defendant collapsed while being used by the decedent. This Court stated at 547-548:

> The proofs established that Ness Contracting had specialized in the construction of preengineered metal buildings for the past twenty-six years. While Ness Contracting may not have used hanging scaffolding on a regular basis, its employees were trained ironworkers who were experienced in rigging hanging scaffolding. Further, it had used other types of scaffolding on numerous occasions. In short, the evidence established that the relationship between defendant Emerson Electric and Ness Contracting and its employees was similar to that observed in *Antcliff*. In both cases, the manufacturers that designed a product line for profes-

sional riggers dealt with professional riggers. Because *Ant-cliff* is controlling, we hold that the trial court abused its discretion in denying defendant Emerson Electric's motion for a directed verdict.

The cases suggest that a duty to warn a purchaser of the inherent dangers of a product does not arise in a situation where the purchaser is a sophisticated user because a sophisticated user is charged with knowledge of the product. The rationale behind the sophisticated-user doctrine is that the manufacturer markets a particular product to a class of professionals that are presumed to be experienced in using and handling the product. Because of this special knowledge, the sophisticated user will be relied upon by the manufacturer to disseminate information to the ultimate users regarding the dangers associated with the product. Hence, the manufacturer is relieved of a duty to warn. See *Jodway, supra*; *Mascarenas v Union Carbide Corp*, 196 Mich App 240, 246-248; 492 NW2d 512 (1992).

According to evidence presented by I.R. Construction, the type of door that injured plaintiff was marketed by catalog only to construction industry and design professionals. The catalog wherein the door was offered gave extensive specifications regarding the door and its installation. The catalog description of the door contains several references indicating that it was to be used in wall installations. The description stated in part: "[y]ou can specify this door with confidence whenever you wish to provide service access to utilities in the walls of stairwells, shafts, corridors and all other wall areas where fire ratings are important." The catalog also contained three models of doors that were specified for use in ceiling applica-

tions, although these doors were not fire-rated. In addition, the installation instructions, which came with the door in question, provided information for installing the door only in either "plaster walls" or "masonry walls." I.R. Construction also presented evidence establishing that the door carried a fire rating that the applicable building codes allowed only in wall-mounted doors. Finally, I.R. Construction presented an affidavit indicating that the company had no knowledge that this type of door was being used in ceiling applications.

In response, plaintiff presented the testimony of his expert witness, who testified that the door was defective because it did not have a mechanism to counterbalance the weight of the door to keep it from swinging freely. Plaintiff's expert found fault in the lack of any labeling to indicate that the door was only to be mounted in a wall. In addition, plaintiff argues that because there was no fire-rated ceiling door being manufactured during the time that the door was purchased, it was foreseeable that a purchaser would use the wall door in a ceiling where a fire rating was needed.

We find that the evidence established that the door in question was designed and intended only for use in a wall. There was abundant literature indicating that the product was to be limited to this usage. Plaintiff failed to present any evidence that I.R. Construction had any knowledge that the doors were being used in ceilings. Plaintiff's expert's testimony is not relevant to the foreseeability of the product being misused. Furthermore, plaintiff's contention that the wall door was installed because there were no fire-rated ceiling doors available is without merit. The testimony indi-

cates that there were no fire-rating requirements for ceiling doors at that time. Therefore, the installation of the door in the ceiling was not a reasonably foreseeable misuse of the product. Furthermore, because the door was marketed only to industry professionals who could be assumed to have a certain mastery of the usage of the product, I.R. Construction is relieved of the duty to warn the ultimate user. *Id.* We therefore conclude that the trial court did not err in granting summary disposition for I.R. Construction on this basis.

On cross appeal, I.R. Construction argues that it was also entitled to summary disposition because its fire-rated door was merely a component part of the overall construction product and, therefore, it has no liability for the dangers associated with its product caused by the manner in which the door was incorporated into the building. We disagree.

The major Michigan case relied on by I.R. Construction is *Jordan v Whiting Corp (On Rehearing)*, 49 Mich App 481; 212 NW2d 324 (1973), rev'd 396 Mich 145; 240 NW2d 468 (1976). In that case, defendant Whiting Corporation supplied component parts that were bought by another company and incorporated into the manufacture of an overhead crane. *Jordan, supra* at 484. After the crane was delivered and installed, the plaintiff's decedent was electrocuted while performing repairs. *Id.* at 485. The Court noted that "Whiting could not have known — at least so far as the record shows — how these components were to be fashioned or fabricated into the completed unit." *Id.* at 486. Upon this finding, the panel held:

> The obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not — at

least yet — extend to the anticipation of how manufactured
components not in and of themselves dangerous or defec-
tive can become potentially dangerous dependent upon the
nature of their integration into a unit designed, assembled,
installed, and sold by another. [*Id.*]

We find that I.R. Construction's argument is without
merit. Here, unlike a component part, the door sup-
plied by I.R. Construction had but one clearly antici-
pated use, as an access door. The door was a fully fin-
ished and self-contained unit that needed only to be
mounted in a particular location. The door did not
lose its identity within the whole of the building.
Unlike manufactured goods that contain component
parts, realty in the form of a building appears to be
more a collection of goods, rather than a single prod-
uct. I.R. Construction's access door was simply one of
those goods, rather than a component part in a legal
sense. We therefore conclude that the lower court
properly rejected this basis for granting I.R. Construc-
tion summary disposition.

Plaintiff recognizes that we review a lower court's
determination to tax costs for an abuse of discretion,
*Beach v State Farm Mutual Automobile Ins Co*, 216
Mich App 612, 621; 550 NW2d 580 (1996); *Miller Bros
v Dep't of Natural Resources*, 203 Mich App 674, 691;
513 NW2d 217 (1994), but argues that the trial court
abused that discretion in granting I.R. Construction
costs in the amount of $2,144.90 for the deposition
transcripts of Irving Rozian, James Williams, Michael
Pruess, and plaintiff, contrary to MCL 600.2549; MSA
27A.2549.[4]

---

[4] I.R. Construction also sought and was granted costs of $40 for motion
fees, but plaintiff does not challenge that portion of the court's taxation of
costs.

The power to tax costs is wholly statutory. *Beach, supra; Herrera v Levine,* 176 Mich App 350, 355; 439 NW2d 378 (1989). Therefore, costs are not recoverable where there is no statutory authority for awarding them. *Id.*

Plaintiff first argues that because the deposition transcripts were not "used" or "read in evidence" at trial, I.R. Construction was not entitled to costs pursuant to MCL 600.2549; MSA 27A.2549 and *Herrera, supra.* If that were the only basis for plaintiff's argument, we would disagree.

MCL 600.2549; MSA 27A.2549 provides that costs for certain depositions may be taxed:

> Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office and for the certified copies of documents or papers recorded or filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used.

Costs for depositions are expressly taxable pursuant to MCL 600.2549; MSA 27A.2549. The plain language of the statute states that such costs are recoverable where the deposition is "read in evidence" at trial or where it is "necessarily used." MCL 600.2549; MSA 27A.2549. Here, excerpts of the deposition transcripts of Irving Rozian, James Williams, Michael Pruess, and plaintiff were necessarily used in the context of I.R. Construction's motion for summary disposition.

Furthermore, *Herrera, supra,* is distinguishable from this case. In *Herrera,* the plaintiffs' case was dismissed when they were not prepared for trial. *Id.* at 355. The defendant filed, and the trial court

granted, a motion to tax costs for deposition transcripts under MCL 600.2549; MSA 27A.2549. *Id.* at 356. The plaintiffs appealed, and this Court held that the costs for the deposition transcripts were not taxable. *Id.* at 358. The panel, however, held that the transcript fees were "not taxable, as the case was dismissed before said items could be 'used' or 'read in evidence' at trial." *Id.* Unlike *Herrera,* the transcripts in this case were "used" in the context of I.R. Construction's successful motion for summary disposition. Therefore, the trial court reasonably concluded that the statute did not bar taxation of costs on this basis.

Plaintiff further argues, however, that the costs for the deposition transcripts were not taxable because the depositions were not "filed in any clerk's office" as required by MCL 600.2549; MSA 27A.2549. Reluctantly, we agree. No Michigan appellate state court has previously addressed this issue in a published opinion.

It is undisputed that I.R. Construction did not file the four deposition transcripts separately in any clerk's office. When the issue was raised before the lower court, I.R. Construction argued that excerpts of the depositions were incorporated with its motion for summary disposition that was filed with the court clerk. The lower court could not recall whether any excerpts were included with the motion, but upon plaintiff's failure to show that they had not been attached, the court granted the costs.

The primary intent of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion

in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc*, 182 Mich App 741, 744; 453 NW2d 301 (1990). Courts may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. *Nat'l Exposition Co v Detroit*, 169 Mich App 25, 29; 425 NW2d 497 (1988). Where the language employed in a statute is plain, certain, and unambiguous, the statute must be applied as written without interpretation. *Wayne Co v Dep't of Corrections Director*, 204 Mich App 712, 714; 516 NW2d 535 (1994). When the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). Such a statute must be applied, and not interpreted, because it speaks for itself. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995).

While logic would indicate that depositions used to resolve a case should be taxable, we cannot rewrite statutes. MCL 600.2549; MSA 27A.2549 plainly states that costs shall be allowed only for depositions "filed in any clerk's office." The plain, clear, and unambiguous language of MCL 600.2549; MSA 27A.2549 indicates that the Legislature intended the taxation of costs only for depositions filed in a clerk's office. Therefore, the trial court was without statutory authority to tax costs for the depositions.

Affirmed in part and reversed in part.