Brenda TOWNER, Plaintiff,

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant–Third Party Plaintiff–Appellant,**

v.

**Lakestates Workplace Solutions, Incorporated and Steelcase, Inc., Third Party Defendants–Appellees.**

No. 01–1696.

United States Court of Appeals, Sixth Circuit.

Jan. 30, 2003.

Before KENNEDY and GILMAN, Circuit Judges, and SARGUS, District Judge.*

* Honorable Edmund A. Sargus, Jr., District    Judge for the United States District Court for

KENNEDY, Circuit Judge.

Third Party Plaintiff–Appellant Grand Trunk Western Railroad ("GTW") appeals from the district court's order granting summary judgment to the Third Party Defendants–Appellees Lakestates Workplace Solutions ("Lakestates") and Steelcase, Inc. ("Steelcase"). At issue is whether there was sufficient evidence to deny summary judgment on GTW's claims of negligence for failure to warn and of breach of implied warranty with respect to manufacturing defects. For the reasons that follow, we AFFIRM.

### I.

Plaintiff Brenda Towner ("Plaintiff"), a clerical employee of GTW, filed her complaint against GTW pursuant to the Federal Employer's Liability Act, 45 USC §§ 1–60, claiming that she was injured on the job when a chair on which she was sitting collapsed, thus causing her back injuries.

GTW filed a third party complaint against Lakestates, the seller of the chair, and Steelcase, the manufacturer of the chair, alleging negligence, breach of express and implied warranty and indemnification as to the collapse of the chair at issue.

Lakestates and Steelcase filed a motion for summary judgment that the district court granted; GTW's subsequent motion for reconsideration was denied.

### II.

Plaintiff, employed by GTW since 1976, was a clerical worker, which required her to sit at a desk, use a computer and printer, answer a telephone and use a fax machine. In 1997, Plaintiff was moved to GTW's Troy, Michigan facility. Plaintiff is approximately 5′10″ tall and weighs approximately 285 pounds.

On July 31, 1998. Plaintiff was sitting on a chair while at work when the chair broke. Plaintiff fell to the floor and sustained back injuries as a result. The chair base remained upright, but the seat fell to the right side and forward. Plaintiff testified that she saw metal pieces of the chair on the floor after she fell. (J.A. at 490).

The chair is a Turnstone Springboard Chair Model # TS38001. GTW bought the chair, and eighty-five others, from Lakestates in April of 1997. The chair was available for use by GTW employees for three shifts per day, seven days per week.

Prior to GTW's purchase of the chairs, in January of 1997, Appellee Lakestates discovered that pivot pins in Model # TS38001 were too short and were falling out, thus causing the seats to break. Lakestates issued a recall to its distributors to upgrade and replace the defective pivot pins. This recall would have included Plaintiff's chair. However, GTW was not notified of the recall by either Steelcase or Lakestates.

Three people besides Plaintiff saw the chair after the accident. First, Plaintiff's supervisor, Steve Redmond, examined the chair in order to fill out an accident report. He testified as follows:

> ... the seat portion of the chair is secured to the base by two metal pins. One of those pins had sheared and snapped—I believe it was the right side—causing the chair to pitch towards the right, and there was—at that time I thought it was permanently settled in that position.

(J.A. at 405–406).

A second GTW employee, Craig Sickles, testified to seeing the chair locked in an

the Southern District of Ohio, sitting by desig-                nation.

234

office approximately one week after the accident. (J.A. at 426). He stated that the chair:

> looked like it was broken off underneath.... Like you take a piece of metal and bend it over to the side and keep bending it back and forth, and it almost breaks but it's not quite broken: that's what it looked like.

(J.A. at 427).

The third GTW witness, who saw the chair one to three days after the accident, was union representative William Claspell. Claspell. having some lay experience in welding, testified:

> I observed the chair, turned it over, looked at it. It was kind of laying half— it was kind of off to the side. And the thing that I—the only thing I remember of the chair is the weld was broke. The weld had not been deep penetration.
>
> The only reason I say this is because I was showed how to weld. My brother and I run a business, so I'm familiar with penetration in a weld, what it looks like, and what a busted weld looks like. There was slag on the top of it, but it looked like the bar where the seam was—as the chair was like this, had a rugged edge where the weld has—just like you laid something down and pulled it off like that, and left a little bead along the side; that's the only thing I remember.

(J.A. at 315–16).

Plaintiff's supervisor, Steve Redmond, testified that the chair was taken out of circulation. Eventually the chair was discarded. It is undisputed that, besides the witnesses noted above, neither party inspected nor tested the actual chair after it collapsed.

Steelcase's in-house expert. Carlon Snyder, investigated the accident and subsequently testified as an expert witness.

Snyder testified that the recall for defective parts on the Turnstone chairs was due to the pivot pins being too short, not due to a problem with the pins shearing. (J.A. at 443, 461). He further testified that if both pivot pins had fallen out, the chair would have fallen vertically forward instead of to the side. (J.A. at 461–62). Moreover, Snyder testified that it would have been impossible for the seat to fall to the side in a vertical position if the pivot pins were involved. (J.A. at 462). However, if only one pivot pin fell out of the chair's control mechanism, Synder stated that the seat was only capable of sliding horizontally backwards and the seat would have remained in place. (J.A. at 461).

Snyder also testified that "[a] chair with a pivot pin issue ... would have nothing— there would be no relevance to any welding issues whatsoever." (J.A. at 462).

Aside from much speculation as to possible causes of the accident based on the witness testimony provided by Plaintiff, Mr. Claspell, Mr. Sickles and Mr. Redmond, the definitive testimony provided by Mr. Snyder is as follows:

> There's much talk or has been much talk about a potential recall situation, and I do not believe that the evidence supports a failure mode that would be indicative of the pivot pin recall issue.
>
> Secondarily, I believe that based on the testimony and evidence presented in the depositions of various people, there is no indication or evidence that there was any manufacturing or design defect inherent in the chair when it left our control.
>
> And I guess the third thing, there was some focus on the weld, especially by Mr. Claspell. And without any physical inspection of that weld on my part, I

have no way of knowing whether the weld itself was in any way defective.

(J.A. at 436).

Again, it should be noted that no expert examined or tested the actual chair in question at any time, and no expert opinion was offered on behalf of GTW.

## III.

This court reviews granting of summary judgment *de novo*. *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 225 (6th Cir. 2002). We apply the same standard as the district court. *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994). We consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, a mere scintilla of evidence in support of the nonmovant's position is not sufficient to create a genuine issue of material fact. *Id.* Rather, the proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.*

## A. Manufacturing Defect: Implied Warranty Claim

Under Michigan law, a plaintiff must establish a causal connection between the alleged manufacturing defect and the injury suffered. *Skinner v. Square D. Co.*, 445 Mich. 153, 165, 516 N.W.2d 475, *reh'g den.*, 445 Mich. 1233, 521 N.W.2d 15 (1994); *Mulholland v. DEC Int'l*, 432 Mich. 395, 415, 443 N.W.2d 340 (1989). A plaintiff satisfies this burden by introducing evidence that provides a basis for the conclusion that it was more likely than not that the alleged defects caused the harm. *Cavalier v. Werner Co.*, 976 F.Supp. 672, 675 (E.D.Mich.1997) (relying on *Skinner*, 445 Mich. at 165, 516 N.W.2d 475). It is insufficient to show that it is merely possible that the defects caused the harm. *Id.* (relying on *Jordan v. Whiting Corp.*, 396 Mich. 145, 240 N.W.2d 468 (1976)). Rather.

> [w]here the evidence indicates that it is as likely that the incident was caused by factors other than those asserted, a verdict for the defendant is mandated since otherwise a verdict would be based on speculation and conjecture.

*American & Foreign Ins. Co. v. General Elec. Co.*, 45 F.3d 135, 140 (6th Cir.1995) (quoting *Skinner v. Square D. Co.*, 195 Mich.App. 664, 491 N.W.2d 648 (1992), *aff'd* 445 Mich. 153, 516 N.W.2d 475, *reh'g den.*, 445 Mich. 1233, 521 N.W.2d 15 (1994)). The plaintiffs evidence is sufficient if it "establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Skinner*, 445 Mich. at 159–60, 516 N.W.2d 475.

■ Significantly, GTW must show that when the chair left the manufacturer, it was defective. *Holloway v. General Motors*, 403 Mich. 614, 621, 271 N.W.2d 777 (1978). While GTW need not eliminate all

possible causes consistent with Appellees' position that there was no manufacturing defect. GTW has the burden of establishing, with direct or circumstantial evidence, "that the defect is attributable to the manufacturer." *Id.*

In the present case, GTW must establish that but for Steelcase's actions in manufacturing the chair, it would not have collapsed. There is no question that the chair collapsed and broke. However, the key inquiry in this case focuses on causation. GTW has proffered testimony that Plaintiff saw metal pieces lying on the floor after the chair collapsed. There is testimony from Steve Redmond, Craig Sickles and William Claspell as to what the chair looked like after its collapse. Mr. Claspell testified that one of the welds he inspected was defective; however, he did not offer an explanation as to the effect that particular weld had on the workings of the chair.

There is also information that the chair was only 15 months old, that it was still under express warranty as to repairs, and that it was not likely to have been used excessively. GTW postulates that the chair collapsed due to a pivot pin problem or a welding failure. Lakestates and Steelcase counter with expert testimony from Carlon Snyder, who testified that a problem with the pivot pins could not have caused the chair to collapse based on the witness testimony of how the chair looked after its collapse. Mr. Snyder further testified that without examining the chair itself, he could not speculate on a welding failure.

From this evidence, we must now conclude whether or not GTW has presented sufficient evidence from which a jury could infer that but for Steelcase's actions in manufacturing the chair, the chair could not have collapsed. We must agree with the district court, which found that, while

GTW need not eliminate all possible causes of the chair's collapse, it must establish that the pivot pin or weld was a potential cause. GTW has failed to sustain this burden.

While Claspell's testimony regarding a defective weld is credible, his testimony does not explain why that particular defective weld would cause the chair to collapse in the way that it did. Neither he nor Snyder testified as to how crucial the weld was and what the weld held together. Based on the evidence presented, the court cannot conclude that a defective weld caused the chair to collapse. Steelcase's expert presented testimony that a chair is sometimes used as a dolly to move heavy objects which could lead to a failure. He further testified that other events could occur after a chair leaves the manufacturer that could lead to a chair's failure. We agree with the district court that the lack of explanation as to how and why this chair collapsed is fatal to GTW's claim. The evidence presented is insufficient to create a genuine issue of material fact; summary judgment was appropriately granted.

While our conclusion should not be understood to always require a plaintiff to produce an expert witness or to require expert examination of the allegedly defective product to establish a manufacturing defect claim, in this case, the lack of expert testimony and lack of opportunity to examine the chair (which was inexplicably disposed of by GTW) precludes GTW from sustaining its burden of producing sufficient evidence to create a genuine issue of material fact.

**B. Negligence for Failure to Warn Claim**

"Under Michigan law, the manufacturer of a product has a duty to warn of dangers associated with the intended uses or reasonably foreseeable misuses of its prod-

uct." *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (2001) (quoting *Portelli v. I.R. Constr. Prods. Co.*, 218 Mich.App. 591, 598–99, 554 N.W.2d 591 (1996)). In order to establish a claim that a product is defective due to a failure to warn, a plaintiff must show that a manufacturer or seller:

(1) had actual or constructive knowledge of the alleged danger;

(2) had no reason to believe that consumers would know of this danger; and

(3) failed to exercise reasonable care to inform consumers of the danger.

*Id.* at 618–19 (quoting *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 741 (6th Cir. 2000)).

Additionally, to state a negligence claim, a plaintiff must establish causation and damages. "Where causation is lacking, the question of a duty to warn need not be addressed." *Id.* at 619 (quoting *Fisher v. Kawasaki Heavy Indus., Ltd.*, 854 F.Supp. 467, 472 (E.D.Mich.1994)).

. [2] Based on our finding that GTW did not sustain its burden of establishing causation, it follows that we also must find that Appellees had no duty to warn GTW regarding the intended use of the chair or regarding the reasonably foreseeable misuses of its products.

## C. Failure to Warn: Weight Capacity of Chair

GTW argued that, based on the district court's finding that the chair has a weight capacity of 225 pounds. Lakestates and Steelcase failed to warn GTW of this restriction in violation of an implied warranty. Lakestates and Steelcase counter that the issue is not properly before the Court because it was not raised properly below. Alternatively, Appellees contend that there was no duty to warn because GTW should be considered a "sophisticated user." Giv-

en our conclusion that GTW failed to establish causation, this issue is moot.

However, we feel compelled to clarify the record as to the district court's finding that the chair had a 225 pound weight capacity. This finding was in error. The deposition of Carlon Snyder is the only evidence about a 225 pound weight limit. When asked about the normal weight range of people for whom the chair was produced, he testified that the industry designs chairs for "the 5th percentile females and 95th percentile male." (J.A. at 455). The 95th percentile male weighs "roughly 215 to 225 pounds," Snyder testified. (J.A. at 455). Based on this testimony, the district court found that "[t]he chairs have a weight capacity of 225 pounds and a ten-year warranty for single shift usage." This was an erroneous finding based on the record. The fact that a chair is designed for persons of a given weight does not mean that it is unsafe for persons above that weight. It says nothing about a weight limitation. The chair could be designed with a margin of safety of 50% or 100%. There is no evidence one way or the other. However, we also agree with the district court's statement in its order denying GTW's motion for consideration that a different disposition of the case would not result had this finding not been made.

## IV.

Based on the foregoing, we hereby AFFIRM the district court's granting of Lakestate's and Steelcase's motion for summary judgment.