# STATE OF MICHIGAN

# COURT OF APPEALS

---

STEVEN ILIADES and JANE ILIADES,

      Plaintiffs-Appellants,

v

DIEFFENBACHER NORTH AMERICA INC,

      Defendant-Appellee.

UNPUBLISHED
July 19, 2016

No. 324726
Oakland Circuit Court
LC No. 12-129407-NP

---

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

JANSEN, J. (*dissenting*).

I respectfully dissent. I would affirm the trial court's order granting summary disposition in favor of defendant in this product liability action under the theory that plaintiff's conduct constituted unforeseeable misuse.

The parties dispute whether plaintiff's conduct constituted a misuse of the press and whether his conduct was reasonably foreseeable. The statute at issue in this case, MCL 600.2947(2), provides, "A manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable. Whether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court." Misuse is defined as "use of a product in a materially different manner than the product's intended use." MCL 600.2945(e).

> Misuse includes uses inconsistent with the specifications and standards applicable to the product, uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product, and uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances. [*Id*.]

"Foreseeability of misuse may be inherent in the product or may be based on evidence that the manufacturer had knowledge of a particular type of misuse." *Portelli v IR Constr Prod Co, Inc,* 218 Mich App 591, 599; 554 NW2d 591 (1996).

Plaintiff's action of partially climbing into the press constituted a misuse of the press. The evidence established that plaintiff acted contrary to the instructions provided by a person

-1-

with knowledge or training regarding the use of the press. According to plaintiff, he reached into the press to retrieve parts. His torso and back were inside the press. Plaintiff testified during his deposition that his left foot remained on the platform and his right knee "leaned in" onto the guard or the metal skirting on the front of the press so that he could reach further into the press. Plaintiff's conduct was contrary to his training. The type of press used by plaintiff may operate in either manual mode, in which an operator must push a button or move a joystick with regard to every motion made by the press, or automatic mode, in which the operator initiates a cycle and then the press moves without additional actions by the operator. Plaintiff's supervisor, Charles Green, found plaintiff trapped in the press while the press was in automatic mode.

Joe Whiteside, a trainer who worked for Flexible Products for 17 years and who operated a press every day for 15 years, was the person who trained plaintiff. Whiteside trained a number of other people before training plaintiff. Whiteside trained plaintiff never to reach inside the press when it is in automatic mode. Instead, he explained that an operator must put the press in manual mode before going inside it. He explained during his deposition, "There's two main rules. One is to always, whenever you're going inside the press, to ensure that it's on manual . . . ." With regard to the light curtain, Whiteside told plaintiff, "Do not bypass the light curtain." He explained during his deposition that the light curtain is a safety device and that an operator must put the press in manual mode before going into the press regardless of the light curtain because the light curtain was not designed to be an "on/off switch." He also explained that it is unnecessary to reach into a press to pull out a part while the press is in automatic mode because clean-up occurs at the end of the shift. Plaintiff did not contradict Whiteside's testimony in his deposition. Although plaintiff testified that he was never told that he could not reach into the press and that "[t]he emphasis was put on a light curtain," plaintiff did not indicate that Whiteside instructed him that he could reach into the press without putting the press in manual mode or that he could partially climb into a press in order to obtain a part. Therefore, the evidence established that plaintiff was instructed not to reach into a press without putting it in manual mode and not to use the light curtain as an on/off switch.

It is clear that plaintiff used the press contrary to the warnings and instruction provided by Whiteside. Whiteside is a person who possessed knowledge or training regarding the use of the product through the 15 years he worked continuously with the presses and through his experience as a trainer. Whiteside instructed plaintiff not to reach into a press when it is in automatic mode and not to bypass the light curtain. I conclude that the evidence established that plaintiff misused the press by partially climbing into the press to retrieve parts while the press was in automatic mode. See MCL 600.2945(e).

The trial court also did not err in concluding that the misuse was not reasonably foreseeable. I agree with the majority that *some* manner of accidental or nonaccidental reaching into a press while the press is in automatic mode was reasonably foreseeable, which is why the light curtain was installed. However, I disagree with the majority's conclusion that plaintiff's act of partially climbing into the press while the press was in automatic mode was reasonably foreseeable.

First, there is no indication that this type of incident ever occurred before. The light curtain on Press Number 25 was installed in 1997. There is no evidence that any other injuries occurred from an operator partially climbing into a press during the over 13-year period that the

light curtain system was in place before plaintiff's accident. Several witnesses testified that they had not received a report of another incident occurring under similar circumstances. James Michalak, a maintenance general supervisor, was unaware of any press operator climbing into a press in order to retrieve parts. The majority alludes to the fact that a regular operator of Press Number 25 noticed that the press would clear even if something traversed the press opening. James Preston, a production supervisor who had used Press Number 25 in the past, testified in his deposition that the light curtain reset when he leaned into or reached into the press to obtain a runner. He admitted that his action of standing inside the light curtain was contrary to his training and that he "wasn't supposed to be doing that." Preston also explained that he did not inform his supervisor regarding the issue. Instead, the issue seemed to only happen with Preston because he was "so skinny," and he was the only one who encountered the issue with the press. Furthermore, Preston did not testify that he partially entered the press by lifting one leg onto the ledge of the press in the manner that plaintiff did, instead testifying that he reached into or leaned into the press. Consequently, there is no indication that anyone had ever suffered the type of injury that plaintiff suffered as a result of climbing partway into the press.

Second, there is no indication that climbing or partially climbing into a press from the front while the press is in automatic mode was common practice, and the fact that press operators relied on the light curtain to stop the press does not establish that plaintiff's conduct was reasonably foreseeable. The majority concludes that the evidence created a genuine issue of fact regarding whether the press operators could practically remove the finished products from the presses without reaching into the presses. There is no dispute that the operators were required to obtain parts from inside the press on occasion. However, the operators were required to put the press in manual mode beforehand in order to prevent the press from cycling while the operator was reaching inside it. The majority further concludes that press operators routinely relied on the light curtain when removing finished products from the presses. While it is true that there was evidence indicating that the press operators relied on the light curtain to stop a press in order for the operators to momentarily reach into the press and remove parts, there was no indication that the press operators routinely climbed or partially climbed into the press through the front opening in order to obtain parts while the press was in automatic mode.[1] In fact, there appears to be no legitimate reason why a press operator would partially climb into a press while it was cycling in automatic mode. Therefore, I conclude that plaintiff's conduct was not reasonably

---

[1] Plaintiff put his upper body and torso inside the press, and he placed his right knee onto the metal skirting on the front of the press. The press came down onto plaintiff's lower back and pushed his chest into his thigh. As a result, plaintiff's lower back and knee were injured. The location and extent of plaintiff's injuries highlight the fact that he went grossly beyond merely placing his hand into the press, which is reasonably foreseeable behavior, and instead partially climbed into the press, which is not reasonably foreseeable behavior.

foreseeable.  See MCL 600.2947(2).  Accordingly, I would affirm the trial court's order granting summary disposition in favor of defendant.


/s/ Kathleen Jansen